GLOBE INDEMNITY COMPANY,
Plaintiff,

v.

Antone **TEIXEIRA** et al., Defendants.

Civ. No. 2052.

United States District Court
D. Hawaii.

March 31, 1964.

Joseph L. Dwight, Jr., Honolulu, Hawaii, for John Lopes, Guardian at Litem for Violet Mae Lopes, a minor.

Richard C. Knight, Alexander C. Marrack, Burnham H. Greeley, Honolulu, Hawaii, Robertson, Castle & Anthony, Honolulu, Hawaii, of counsel, for plaintiff.

Ambrose J. Rosehill, Howard K. Hoddick, Honolulu, Hawaii, for defendants, Antone Teixeira, Glen A. Teixeira, Mabel Jane Teixeira, individually and as Guardian ad Litem for Glen A. Teixeira, a minor.

Edwin H. Honda, Honolulu, Hawaii, for defendants, Dennis Okudara and James Okudara.

Louis B. Blissard, Honolulu, Hawaii, for defendants James M. Dunn and Christable M. Dunn.

TAVARES, District Judge.

In this diversity action, plaintiff, Globe Indemnity Company, seeks a Declaratory Judgment that it is not liable to any defendant on a certain "Family Automobile Combination Policy" issued to defendant, Antone Teixeira, and that it is not obligated thereunder to defend any actions arising out of the accident hereinafter mentioned. Owing to prior rulings of the Court, there are no counterclaims or cross-claims in the case. Plaintiff has moved for a Summary Judgment in its favor.

The facts are simple and are undisputed.

On January 5, 1961, plaintiff issued to defendant, Antone Teixeira, a "Family Automobile Combination Policy," effective for one year. On November 3, 1961, defendant, Glen Albert Teixeira, the son of defendant, Mabel Jane Teixeira, was driving a certain 1960 Corvair automobile and an accident occurred resulting in injuries to certain persons and in the death of one person.

The policy provides that plaintiff will pay, up to the limits of the policy, all sums for which the insured would become legally liable for bodily injury, including death, and for property damage for which the insured would become legally liable, "arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile," that plaintiff will pay, up to the limits of the policy, all medical expenses of persons injured while occupying either the owned automobile or a non-owned automobile, and that plaintiff will defend any actions seeking damages payable under the terms of the policy.

The policy defines (1) an owned automobile as "a private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile," (2) a non-owned automobile as "an automobile or trailer not owned by or furnished for the regular use of either the insured or any relative, other than a temporary substitute automobile," and (3) a temporary substitute automobile as "any automobile or trailer not owned by the named insured, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The policy lists a 1957 Packard and a 1942 Ford Jeep under the heading, "Description of owned automobile or trailer," and recites that the total number of private passenger, farm and utility automobiles owned on the effective date of the policy by the named insured was two. This would seem automatically to exclude any other owned automobile. Defendants contend, however, that the term, "owned automobile, describing automobiles covered by the policy, includes the Corvair automobile, although it is not expressly listed therein. The Court will assume for the purposes of this decision, that such listing of two automobiles and such reciting the number of automobiles are not exclusive as to the owned automobiles covered by the policy.

The named insured is defendant, Antone Teixeira, and includes his wife, defendant, Mabel Jane Teixeira. Plaintiff concedes that defendant, Glen Albert Teixeira, is an insured under the terms of the policy. There is no contention that the Corvair automobile was a temporary substitute automobile. The only questions, therefore, for determination by the Court, after making the assumption hereinabove mentioned, are whether, at the time of the accident, the Corvair automobile was an owned automobile or a non-owned automobile within the contemplation of the policy.

Prior to said accident, the Corvair automobile was being purchased by one William Sylva on a time payment plan with General Motors Acceptance Corporation and he was the registered owner. In April, 1961, Sylva came to live with the Teixeiras and brought the car with him at that time. In June, 1961, he left

Hawaii to work on a ship and the Teixeiras have not seen or heard from him since then. When he left, he left the car with defendant, Mabel Jane Teixeira, for the use of the Teixeira family. She had discussed with Sylva the possible purchase by her of the automobile but had not reached any agreement with him as to such purchase. Her general plan was to purchase the car if Sylva did not return in a year and if she sold some real property which she owned to Texaco. After Sylva left, she made the monthly payments on the car, on what basis it does not appear, but made no payments to Sylva.

Mabel Jane Teixeira asked General Motors Acceptance Corporation about having the registration of the Corvair transferred to her and she was told that Sylva's signature would be required. He had not signed the registration to her before he left and she never attempted to contact him about transferring the registration. She sold her real property to Texaco in 1962.

The Corvair was available for use by the Teixeira family whenever they wanted to use it. From the time Sylva left Hawaii until the date of the accident, it was used daily by Mabel Jane Teixeira, Glen Albert Teixeira and Judy Andres, and once or twice by Antone Teixeira, all members of the Teixeira family. It was kept in the yard and the keys were kept on a hook in the kitchen when it was not in use. Gasoline for the car was purchased by Mabel Jane Teixeira.

No citation of authority is necessary to sustain the proposition that the words "own" and "owner" may have many and varied meanings, depending upon many factors. It would seem to be at once apparent that, according to the general definition of the word "owner," defendant, Mabel Jane Teixeira, was not the owner of the Corvair automobile at the time of the accident. However, counsel for some defendants urge that, by virtue of Section 160–1, Revised Laws of Hawaii 1955, defendant, Mabel Jane Teixeira, was the owner of said automobile at the time of the accident.

That section provides as follows:

" 'Owner' means a person having the lawful use or control or the right to the use or control of a motor vehicle under a lease or otherwise for a period of ten or more successive days."

If this definition of "owner" is accepted as applying to the policy, there would be no doubt that defendant, Mabel Jane Teixeira, was the owner of said automobile at the time of the accident. However, that section begins as follows:

"§ 160–1. Definitions. As used in this part: * * *."

That part has to do with the registration of vehicles. Section 160–2 of that part provides as follows:

"Every owner of a motor vehicle which is to be operated upon the public highways shall, for each vehicle owned, except as herein otherwise provided, apply to the treasurer of the county where such vehicle is to be operated, for the registration thereof. * * *"

The Court is of the view that the purpose of such provision is to have a public record of the ownership of motor vehicles for the benefit of persons who have reason to determine such ownership, that a person having the lawful use or control, or the right to the use or control, of a motor vehicle under a lease or otherwise for a period of ten or more successive days is considered the owner thereof only for such purpose and that such definition does not, and was not intended to, have general application.

Section 160–80, Revised Laws of Hawaii, provides as follows:

"§ 160–80. Definitions. As used in this part: * * *.

" 'Owner' or 'registered owner' has the meaning prescribed by section 160–1 to the term 'owner': * * *."

That part has to do with the Motor Vehicle Safety Responsibility Act, Section 160–80 et seq., Revised Laws of Hawaii, which provides for the suspension under certain circumstances, of the

driver's license of the operator and registered owner of a motor vehicle when the operator cannot pay his liability for damages resulting from an accident.

■ The Court is of the view that such definition, as applied to the Motor Vehicle Safety Responsibility Act by Section 160-80, is so applied only for the purpose of including such persons in that Act and that it does not, and was not intended to, have general application, especially to the extent of defining the term as used in private insurance policies.

■ Counsel for plaintiff argues that, because of the provisions of the Hawaii statutes relating to the transfer of ownership and registration of motor vehicles, the owner of a motor vehicle as contemplated by the policy cannot be a person whose ownership has not been recorded as required by such statutes. This might or might not be so. It might be that, under certain circumstances and for certain purposes, such a person might be the owner of such motor vehicle even within the contemplation of the policy. It is not necessary for the Court to rule on this contention because it is of the opinion, and holds, that defendant, Mabel Jane Teixeira, at the time of the accident herein involved, was not, as to the problem herein involved, the owner of said Corvair automobile as that term was used in the policy, regardless of such provisions of the Hawaii statutes relating to the transfer of ownership and registration of motor vehicles.

The policy defines a non-owned automobile as that term is used therein as "an autombile or trailer not owned by or furnished for the regular use of either the insured or any relative, other than a temporary substitute automobile." As has been pointed out, it is not contended that the Corvair automobile was a temporary substitute automobile.

■ Counsel for some defendants argue that the word "not" in the foregoing quotation applies only to the word "owned" therein and not to the words "furnished for the regular use of either the insured or any relative" and that, therefore, the policy covers said Corvair automobile because it was "furnished for the regular use of either the insured or any relative" and it was other than a temporary substitute automobile. The Court cannot agree with this contention. The Court is of the opinion that the word "not" applies to both portions of said provision of the policy and, since the Corvair automobile was "furnished for the regular use of either the insured or any relative," and was not a temporary substitute automobile, it was not covered by said portion of said provision.

There is another problem of interpretation involved as to said provision of the policy. A literal reading of said provision, after considering the word "not" as included in the latter portion thereof, results in its meaning that a non-owned automobile is either

(a) an automobile or trailer not owned by either the insured or any relative,[1] other than a temporary substitute automobile,

or

(b) an automobile or trailer not furnished for the regular use of either the insured or any relative, other than a temporary substitute automobile.

Such a reading of said provision would result in said Corvair automobile's being covered by the policy under (a) as a non-owned automobile.

The Court is aware of the rule that where an insurance policy is ambiguous and therefore is susceptible of more than one reasonable meaning or interpretation, that meaning or interpretation will be adopted generally which favors the insured rather than the insurer.

However, the Court does not believe that the rule goes so far as to require that—where a portion of a policy is obscure or ambiguous, so that it is susceptible of two possible interpretations, one of which gives effect to all of the

---

1. It is not contended that Sylva is a relative of the insured.

words of the policy concerned, and the other of which renders a part of those words utterly redundant and therefore meaningless—the Court must adopt the latter, simply to favor the insured.

■ The Court believes that an insurance policy must be considered in the manner required for all contracts generally, as held by the decisions of the Hawaii Supreme Court, so as to ascertain the intent from the entire contract, and to give effect to that intent if reasonably possible, so as to give to every word in the contract a reasonable meaning and effect.

A literal construction of said provision would require the Court to so construe the portions of the policy in question as to render part of the words totally ineffective and redundant. On the other hand, it seems to the Court that the general intent of this contract can be ascertained from reading it as a whole, in the light of the obvious reasons for an insurance company to restrict coverage, namely, that insurance companies are in the business to make money, and that a policy which would give to an insured who simply took out a policy on a single owned car, coverage on any number of other cars not owned by him, but furnished for his regular use, just as if he had owned them, would be ruinous to an insurance company. This view is strengthened by the fact that where more than one owned automobile is included, as a rule the insurance premium is larger. It seems obvious to the Court that the insurance company could not reasonably have intended such ruinously broad coverage.

With the foregoing in mind, we look at the relevant terms of the policy which first provides that an owned automobile includes certain types of vehicles "owned by the named insured" and "includes a temporary substitute automobile." Temporary substitute automobile is then defined as a certain type of vehicle "not owned by the named insured, while temporarily used as a substitute

for the owned automobile, * * * when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Obviously this includes a non-owned automobile "furnished for the regular use" of the insured, but is limited to the temporary use defined. Thus the policy as a whole evidences a purpose not to grant unlimited coverage for non-owned vehicles furnished for the regular use of insured. Thereafter the term "non-owned automobile" is defined, and here arises the difficulty, the language being,

> " 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."

If this language is literally construed so that the word "or" creates two mutually exclusive clauses, each of which clause per se gives full coverage to a non-owned automobile of the type defined, alternative (b) becomes ineffective and meaningless. In other words, if the word "or" is construed in its strict and most limited sense, the effect would be that the whole of clause (b) reading, "or [not] furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile," would have no independent effect and would be useless and redundant, since all automobiles coming within its purview would already be included in clause (a) and there would be no point in defining this already included subclass. Moreover, this construction would render useless the "temporary substitute automobile" definition, since a non-owned automobile under clause (a) would also cover that group.

The obvious solution is to adopt a construction which will give some effect or meaning to the words in the latter portion of the definition of non-owned automobile, and we are aided in this by Revised Laws of Hawaii 1955, Section 1–23, which has been the law of this State for

almost a hundred years, reading as follows:

   " '*Or*,' '*and*.' Each of the terms 'or' and 'and,' has the meaning of the other or of both."

 The word "or" has been construed under this section to apply to contracts as well as to laws, so that "or" has the meaning of "or" or "and," or both, whenever it is evident that it was intended to have that effect. Chapin v. Tisdale (1883), 5 Hawaii 52, and McBride Sugar Company, Limited, v. Manuel Andrade (1915), 22 Hawaii 578, 580–581.

The Court therefore construes said provision of the policy as providing that a non-owned automobile covered by the policy is an automobile or trailer not owned by *and not* furnished for the regular use of either the insured or any relative, other than a temporary substitute automobile. Inasmuch as said Corvair automobile (a) was not owned by either the insured or any relative, (b) was furnished for the regular use of the insured and relatives of the insured, and (c) was not a temporary substitute automobile, it was not covered by the policy at the time of the accident herein involved.

For the foregoing reasons the Court holds that plaintiff is entitled to a Summary Declaratory Judgment in its favor, and for its costs herein incurred, against all defendants over whom this Court has obtained jurisdiction in this action, to the effect that plaintiff is not liable to any such defendant on the policy herein involved and that it is not obligated thereunder to defend any actions arising out of the accident herein involved.

Attention is called to footnote 2 on 230 F.Supp. 446 of the Decision filed herein on June 28, 1963. The Judgment herein will clarify the uncertainty as to the correct name of said minor.

Counsel for various defendants have suggested that they are entitled to attorneys' fees, to be paid by plaintiff, for their representation of minors herein.

Within five days from the date of the filing of this decision, such counsel may move the Court for orders awarding such fees. If any such motions are filed, then within five days after the decision of the Court on such motions, or if no such motions are so filed, then within ten days from the date of filing of this decision, counsel for plaintiff will prepare a form of Judgment, approved by counsel for the other parties herein. If counsel cannot agree thereupon, the Court will hold a hearing and determine the form and contents thereof. Such Judgment, when entered, will constitute the Judgment herein.