807 P.2d 1256 (1991)
HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., Plaintiff-Appellee,
v.
FINANCIAL SECURITY INSURANCE COMPANY, Defendant, and Gene K. Sheldon, Edna Jean Sheldon, Marc Lehman, Individually and as Temporary Administrator of the Estate of Denise Lehman and as Prochein Ami of Daniel Paul Lehman and Nicole LeBleu Lehman, minors, Defendants-Appellants.
No. 14051.
Supreme Court of Hawaii.
March 18, 1991.
Reconsideration Denied April 5, 1991.
*1257 Roy Y. Yempuku, Yempuku & Goo (Gary S. Miyamoto, with him on the briefs), Honolulu, for plaintiff-appellee.
Thomas L. Benedict, Rush, Moore, Graven & Stricklin, (Brian Takahashi, with him on the brief), Honolulu, for defendants-appellants Gene K. Sheldon and Edna Jean Sheldon.
David Bettencourt, Honolulu, for defendants-appellants Marc Lehman, Individually and as Temporary Adm'r of the Estate of Denise Lehman and as Prochein Ami of Daniel Paul Lehman and Nicole LeBleu Lehman, minors.
Before LUM, C.J., and PADGETT, HAYASHI, WAKATSUKI and MOON, JJ.
MOON, Justice.
Plaintiff-Appellee Hawaiian Insurance & Guaranty Co., Ltd. (HIG) commenced the instant action to obtain declaratory relief in connection with its rights and duties under an insurance policy issued to Gilwick, Inc. dba Datsun of Waipahu (Gilwick). HIG sought declaratory judgment that it was not obliged to defend nor indemnify Defendants-Appellants Gene K. Sheldon and Edna Jean Sheldon (collectively, the Sheldons) with respect to claims arising from a motor vehicle accident in which Denise Lehman was killed.[1] The accident involved a 1983 Nissan Pulsar (Nissan), previously sold by Gilwick to the Sheldons. Following a jury-waived trial, the trial court determined that the HIG policy did not provide coverage for the claims asserted against the Sheldons. The court ruled that the Sheldons' automobile insurance policy, issued by Defendant Financial Security Insurance Company (FSIC) at the time the Nissan was purchased, provided coverage and thus FSIC was obliged to defend and indemnify the Sheldons. We affirm.

I. ISSUES
The ultimate question before us is whether the HIG policy insured the Sheldons against liability for damages arising out of the death of Denise Lehman. Our discussion centers on whether Hawaii's Motor Vehicle Registration and/or Motor Vehicle Accident Reparations (commonly referred to as the "no-fault law") statutes are determinative of "ownership" of an automobile for purposes of insurance coverage disputes.[2] We have considered the other issues presented by the Lehmans and conclude that they lack merit.

II. FACTS
On December 28, 1983, the Sheldons executed a retail installment contract to purchase the Nissan from Gilwick, a commercial seller of new and used automobiles. At the time of the transaction, Gilwick was listed as the registered owner and First Hawaiian Bank (FHB) was listed as the lien holder or legal owner on the Nissan's certificate of title. Pursuant to the terms of a security agreement between Gilwick and FHB, Gilwick was required to and did purchase comprehensive general liability insurance from HIG covering its fleet of automobiles. The HIG policy provided automobile liability coverage for each vehicle in the amount of $500,000 per occurrence.
As a general practice, Gilwick required its purchasers to obtain financing for the *1258 balance of the purchase price and no-fault and liability insurance coverage (no-fault policy/insurance)[3] prior to delivering possession of the vehicle to the purchaser. In the present case, the Sheldons made a $1,000.00 down payment towards the purchase price of $8,332.00 by way of $880.00 cash and a $120.00 promissory note due on January 15, 1984.[4] In compliance with Gilwick's requirements, the Sheldons obtained financing from Central Pacific Bank (CPB) and no-fault insurance from FSIC, which included liability coverage up to $25,000 per person per accident. The Sheldons thereafter received possession of the Nissan on December 28, 1983.
On January 16, 1984, Gene Sheldon while operating the Nissan was involved in a motor vehicle accident which resulted in the death of Denise Lehman. At the time of the accident, the vehicle's Certificate of Ownership still identified Gilwick as the "registered owner" and FHB as the "Legal Owner or Lien Holder" because Gilwick had not yet processed the documents reflecting the transfer of ownership from Gilwick and FHB to the Sheldons and CPB. The new certificates of ownership and registration were issued by the Department of Motor Vehicles on February 3, 1984.
On April 3, 1984, HIG filed this action against defendants FSIC, the Sheldons and the Lehmans. Following a bench trial, the court issued its findings of facts, conclusions of law and judgment in favor of HIG and against all of the defendants. The Sheldons and the Lehmans timely appealed. FSIC did not appeal.

III. DISCUSSION

A. Hawaii Motor Vehicle Registration Law

The Lehmans urge a literal reading of the motor vehicle registration statute, HRS § 286-52(e) (1976), which provides:
Until the director of finance has issued the new certificate of registration and certificate of ownership as in subsection (d) provided, delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed, and the intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose, notwithstanding any provision of the Uniform Commercial Code; provided that a security interest in a motor vehicle shall be perfected as provided in the Uniform Commercial Code, sections 490:9-302(3)(b) and 490:9-302(4), and that the validity, attachment, priority, and enforcement of such security interest shall be governed by Article 9 of the Code.
(Emphasis added.) The Lehmans argue that since the new certificates of ownership and registration had not been issued by the director of finance, Gilwick remained the owner of the Nissan on the date of the accident; and thus, Gilwick's HIG policy and not FSIC's should provide coverage to the Sheldons.
This court has previously faced this issue and held that as between two insurance companies, the company insuring the purchaser of an automobile is obligated to provide coverage for an accident involving the subject vehicle after it is sold and possession transferred to the purchaser, despite non-compliance with the motor vehicle registration statute. Pacific Insurance Company, Limited v. Oregon Automobile Insurance Company, 53 Haw. 208, 490 P.2d 899 (1971). In Pacific, this court was called upon to interpret Revised Laws of Hawaii (RLH) § 160-10(e) (1955), predecessor of HRS § 286-52(e),[5] to determine whether the statute controlled in an insurance coverage dispute between two companies, *1259 one insuring the seller and the other the buyer of an automobile. Pursuant to an agreement of sale, the buyer paid the purchase price and took possession of the vehicle. Subsequently, the subject vehicle was involved in an accident prior to the issuance of the certificates required under RLH § 160-10(e). This court found that the statute was plain and unambiguous in providing that non-compliance with the statute invalidates any intended transfer of ownership "for any purpose." However, we reasoned that the phrase "for any purpose" in the statute was not all encompassing, and that "departure from literal construction is justified when such construction would produce an absurd and unjust result and the literal construction in the particular action is clearly inconsistent with the purposes and policies of the act." 53 Haw. at 211, 490 P.2d at 901 (citations omitted).
In Pacific this court specifically found that strict application of RLH § 160-10(e) would produce an unreasonable and absurd result as nothing in the language of the statute nor its legislative history indicated that the "legislature intended that the seller of an automobile should assume civil liability for negligent operation of the automobile by the buyer merely because the Treasurer had not issued new certificates of ownership and registration." 53 Haw. at 212, 490 P.2d at 901 (emphasis added). We deemed such an interpretation to be outside the realm of the objectives of the statute, which were to "provide a means of registering the title of an automobile for the protection of the public; to assist governmental officials to readily determine the ownership of an automobile; and to prevent unlawful and dishonest dealing in automobiles." 53 Haw. at 212, 490 P.2d at 901-02 (footnote omitted). See also Moore v. Allstate Insurance Company, 6 Haw.App. 646, 736 P.2d 73 (1987). It is important to note that although this court in Pacific referred to the issue in terms of tort liability, the facts, as in the instant case, indicate that the ultimate issue decided was actually one of insurance coverage as between two insurance companies.
Since the decision in Pacific, the motor vehicle registration statute has been amended and recodified;[6] however, there has been no change that would alter or detract from the holding in Pacific.
The Lehmans argue that the facts in the instant case are distinguishable from those in Pacific because Pacific involved an individual and not a commercial seller; and that in Pacific, documents necessary to transfer ownership were submitted to the treasurer for registration, while in the instant case, Gilwick intentionally withheld processing the transfer documents until the $120.00 balance on the promissory note was paid.[7] We find, however, that the Lehmans' contentions are without merit as they fail to convince us of any relevant distinctions between their case and Pacific with respect to determining ownership in an insurance coverage dispute.
On the contrary, we find Pacific dispositive of the Lehmans' position regarding HRS § 286-52(e) as there is substantial evidence to support the trial court's finding that ownership, in an insurance context, was transferred to the Sheldons, consistent with the intent and expectations of the parties. At the time of purchase on December 28, 1983 and prior to taking delivery *1260 of the Nissan, Gilwick required and the Sheldons obtained their own no-fault insurance which was consistent with the notice set forth in the retail installment contract that Gilwick was not providing insurance coverage to the Sheldons for the Nissan. The sales contract specifically provided that it:
DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE AND DOES NOT MEET THE REQUIREMENTS FOR PROOF OF FINANCIAL RESPONSIBILITY UNDER CHAPTER 287, HAWAII REVISED STATUTES.
(Emphasis in original.) This notice clearly indicates that Gilwick did not intend and the Sheldons could not have expected that Gilwick would provide insurance coverage to the Sheldons.
In the context of insurance coverage disputes, we must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured's intent and expectations. Globe Indemnity Company v. Texeira, 230 F.Supp. 451 (D.Hawaii 1964). In so doing, we shall construe insurance policies according to their plain, ordinary, and accepted sense in common speech unless it appears that a different meaning was intended. First Insurance Co. of Hawaii, Inc. v. State of Hawaii, 66 Haw. 413, 665 P.2d 648 (1983). Moreover, this court has stated that it is committed to enforce "the objectively reasonable expectations" of parties claiming coverage under insurance contracts, which "are construed in accord with the reasonable expectations of a layperson." Fortune v. Wong, 68 Haw. 1, 702 P.2d 299 (1985); Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203, 684 P.2d 960 (1984).
Looking first at the HIG policy issued to Gilwick, the "Comprehensive Automobile Liability Insurance" specifically provided, in relevant part, that "the owner . . . of a non-owned automobile" is not an insured and thus excluded from coverage. A "non-owned automobile" is defined as "an automobile which is neither an owned automobile nor a hired automobile." An "owned automobile" is defined as "an automobile owned by the named insured." Based upon the aforementioned language, neither Gilwick nor HIG intended that coverage be extended to the Sheldons, since the word "owner" when considered in its plain, ordinary and accepted sense in common speech would include a buyer who enters into a valid sales agreement and takes possession and control of the subject vehicle. Pacific, 53 Haw. 208, 490 P.2d 899 (1971).
Review of the FSIC policy confirms the fact that the Sheldons understood that they were the owners of the Nissan since the policy specifically names Gene K. Sheldon as the named insured and lists the Nissan in the Declarations as the covered vehicle for the period December 28, 1983 (date the Sheldons took possession and control of the Nissan) to June 28, 1984. The definition of "your covered auto" includes "any vehicle owned by you [named insured and spouse] and shown in the Declarations." (Emphasis added.) Considering the language of the FSIC policy, the notice provision set forth in the sales contract, and the fact that the Sheldons paid no portion of the HIG premium, a literal interpretation of HRS § 286-52(e) would create a legal fiction, making the Sheldons an insured of HIG after they took possession and exercised exclusive control over the use of the Nissan. Such an absurd result is clearly outside the realm of the Sheldons' objectively reasonable expectations, and more so of the Lehmans', who could only be said to have reasonably expected recovery from the negligent operator's (Gene K. Sheldon's) insurer, FSIC.
Therefore, under the circumstances of this case, we find that HRS § 286-52(e) is not determinative of ownership for purposes of resolving coverage disputes under automobile insurance policies.

B. Hawaii No-Fault Law

The Sheldons contend that the Hawaii *1261 No-Fault Law [8] addresses the insurance obligations of automobile owners and establishes that Gilwick was the owner of the Nissan on January 16, 1984. They refer to HRS § 294-8(a)(1), as amended in 1978,[9] which requires every "owner" of a motor vehicle to maintain a no-fault policy[10] on that vehicle and rely upon the definition of "owner" under HRS § 294-2(13), which they maintain includes Gilwick.
HRS § 294-2(13) (1976 & Supp.1984) provides:
`Owner' means a person who holds the legal title to a motor vehicle except that in the case of a motor vehicle which is the subject of a security agreement or lease with a term of not less than one year with the debtor or lessee having the right to possession, such term means the debtor or lessee. Whenever transfer of title to a motor vehicle occurs, the seller shall be considered the owner until delivery of the executed title to the buyer, from which time the buyer holding the equitable title shall be considered the owner.

(Emphasis added.)
The Sheldons first argue that "[b]y choosing the date executed title is delivered to the buyer as the date upon which `ownership' transfers from the seller to the buyer, the Legislature provided certainty to the question of who must provide no-fault insurance." Initially, we note that the definition of "owner" in HRS § 294-2 is expressly limited to that term "[a]s used in this chapter [294]." By limiting the application of the statutory definition of "owner" to Chapter 294, it is clear that the legislature did not intend that the definition dictate the meaning of the term as used in automobile insurance policies. In Globe Indemnity Company v. Texeira, 230 F.Supp. 451, 453 (D.Hawaii 1964), which involved an insurance coverage dispute, the court held that the statutory definition of "owner" under the Motor Vehicle Safety Responsibility Act "does not, and was not intended to, have general application, especially to the extent of defining the term as used in private insurance policies." We likewise conclude that the term "owner" as defined in HRS § 294-2(13) is not determinative of ownership in the context of insurance coverage disputes. This conclusion is partially based on our previous discussion regarding the specific language of both insurance policies, the manner in which such policies are to be construed and the objectively reasonable expectations of the parties claiming coverage under such insurance contracts.
Additionally, we look to the legislative history of the no-fault law and its objectives in concluding that the statutory definition of "owner" has no controlling effect on the term as used in the HIG policy.
"The Legislature, ... enacted the Hawaii No-Fault Law to provide motor vehicle accident victims assured, adequate and prompt reparation for certain economic losses without regard to fault. The clear objectives of the law are to: (1) institute insurance reform in order to (a) expedite the settling of all claims, (b) create a system of reparations for injuries and loss arising from motor vehicle accidents, (c) compensate these damages without regard to fault, and (d) modify tort liability for these accidents; and (2) to reduce the cost of motor vehicle insurance by establishing a uniform system of motor vehicle insurance."
Parker v. Nakaoka, 68 Haw. 557, 559, 722 P.2d 1028, 1030 (1986) (citations omitted).
In order to accomplish these objectives, the legislature provided that "no person *1262 shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy." HRS § 294-8(a)(1) (Supp.1984). The legislative history further indicates that
[e]very owner of a motor vehicle will be required to have a no-fault policy as a precondition to operating his vehicle. The bill provides for the enforcement of this protection of the motoring citizen at the time of registration annually, or at the time of purchase, or upon the importation of a foreign-licensed vehicle into the State.
Hse.Conf.Comm.Rep. No. 13, in 1973 House Journal, at 1220 (emphasis added). Clearly, the requirements of HRS § 294-2(13) that the seller remain the "owner" of the subject vehicle "until delivery of the executed title to the buyer" is consistent with the obvious goal of assuring payment of certain benefits to persons injured in automobile accidents regardless of fault while also requiring a mandatory amount of liability coverage.[11] Such requirements guarantee continued insurance coverage on any vehicle being sold, while documents transfering title are being processed and the buyer obtains his or her own coverage for the newly acquired vehicle. In this case, continued insurance coverage was guaranteed and the intent of the legislature completely satisfied when Gilwick required and the Sheldons did obtain their own no-fault policy before taking possession of the Nissan.
Relying on the exception provided in the statute, the Sheldons' second contention is that Gilwick was a "debtor" to FHB based upon their security agreement; and, since the Sheldons were in default because the balance of the downpayment under the promissory note ($120.00) had not been paid by the January 15, 1984 due date, Gilwick had the "right to possession" of the Nissan on the date of accident, January 16, 1984. Thus, they conclude that HIG is required to provide coverage. However, having found that the statutory definition of "owner" does not affect its meaning in the HIG policy and that the no-fault protection contemplated by the legislature was already in place when the Sheldons took possession of the Nissan, we find the Sheldons' second contention to be without merit.
Moreover, a primary objective of the Hawaii no-fault law is to reduce motor vehicle insurance costs. A strict application of HRS § 294-2(13) to the facts of the instant case would not only make an insurer liable for damages when the named insured is not liable, but would extend liability for risks not contemplated by the insurer. Such a result would create uncertainty in assessing risks among insurers which in turn would undoubtedly create increased premium costs thereby frustrating the legislative objective.
Finally, while the Lehmans and the Sheldons on appeal contend that Gilwick's HIG policy should provide coverage for the January 16, 1984 accident, they do not assert that both HIG and FSIC policies should be "stacked" or provide double coverage.[12] It is apparent that if the HIG policy merely met the basic no-fault requirements of liability coverage limits of $25,000 per person per accident as did the Sheldons' FSIC policy or if the FSIC policy provided $500,000 coverage, this controversy would probably not have arisen. This court sympathizes with the Lehmans, acknowledging that the HIG policy limits of $500,000 would more closely compensate them for their loss. However, for this court to find Gilwick's HIG policy applicable by literally construing HRS § 294-2(13) or § 286-52(e) would produce unreasonable and absurd results *1263 and cause violence to the parties' intentions and reasonable expectations.

IV.
Based on the foregoing, we affirm the judgment below in favor of HIG and against FSIC, the Sheldons and the Lehmans.
PADGETT, Justice, dissenting.
I respectfully dissent. In this case, Gilwick, the owner and seller of the automobile, had a $500,000 limitation of liability policy issued by HIG on the vehicle involved in the tragic accident in question. Gilwick delivered possession of the vehicle to the Sheldons, as purchasers, and the Sheldons, in accordance with their contract with Gilwick, procured their own liability policy with a $25,000 limitation. However, Gilwick did not process the paperwork and present the necessary papers to the director of finance for the transfer of the ownership certificate until after the accident had occurred.
The majority opinion absolves HIG of any responsibility under its policy in this case, without ever discussing the terms of the policy which HIG issued to Gilwick. That policy provided in part:
PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below:
....
(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission[.]
The policy also provides:
"owned automobile" means an automobile owned by the named insured[.]
Moreover, the policy provides:
When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated . . . below[.]
At the time of the accident, there can be no dispute that the car in question was an "owned" automobile of Gilwick for purposes of the policy, that Sheldon was using the automobile with the permission of Gilwick, and that that use was within the scope of the permission given by Gilwick.
This is not a question of "stacking," as the majority opinion intimates, but a question of whether or not the HIG policy covered the Sheldons at the time of the accident. In my view, it clearly did.
I know of nothing in the law that prohibits two parties, each having interests in a vehicle from taking out separate liability policies thereon. The policy expressly contemplates that possibility.
The majority is holding that, somehow or other, the otherwise valid and subsisting HIG policy was terminated.
Was it terminated by the act of transferring possession to the Sheldons? If so, then the policy language, defining an insured as a person to whom permission to use is given, is surplusage in the policy, and must be disregarded. Was it the act of the Sheldons in taking out insurance? If so, where is the provision in the policy or in the law that says the fact that a second person takes out a liability policy on the same vehicle cancels any other policies?
In reaching its result, the majority not only ignores the policy provisions which made Sheldon an "insured" at the time of the accident, but goes on to emasculate the plain language of HRS § 286-52(e) (1976) and HRS § 294-2(13) ((1976) and (Supp. 1984)), both of which so define "owner" as to include the "insured" under the policy which HIG issued.
The majority talks of the reasonable expectations of the parties to the contract, but there is nothing in the record, that I am aware of, to show that HIG and Gilwick did not expect the casualty policy to cover liability to persons using the vehicle with the permission of Gilwick. Indeed, the policy language is exactly the contrary.
*1264 HIG issued the policy in question for a consideration. That policy, by its express terms, covered the Sheldons, and it should have followed that HIG, as well as Financial Security, the Sheldons' insurer, were both obligated to defend and indemnify for the injuries arising out of the driver's negligence. Nothing in the law, or in the language of the policy issued by HIG, terminated it when either possession was delivered to the Sheldons, or when the Sheldons took out their insurance policy. Accordingly, I would reverse the judgment below.
NOTES
[1] On January 25, 1985, Marc Lehman, individually and as temporary administrator of the estate of Denise Lehman and as next friend of Daniel Paul Lehman and Nicole LeBleu Lehman, minors, (collectively, the Lehmans) filed a wrongful death action against numerous defendants, including Gilwick and the Sheldons.
[2] The Sheldons and the Lehmans submitted separate briefs on appeal. The Sheldons' argument on appeal, in which the Lehmans join, is confined to the Hawaii no-fault statute. However, the Sheldons do not join in the Lehmans' points of error.
[3] In 1983, requirements of a "no-fault policy" included "[l]iability coverage of not less than $25,000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident[.]" Hawaii Revised Statutes (HRS) § 294-10(a)(1) (1976 & Supp.1984).
[4] The Sheldons paid the $120.00 due on the promissory note on February 1, 1984.
[5] RLH § 160-10(e) (1955) stated in pertinent part:

(e) Until the treasurer [director of finance] has issued the new certificate of registration and certificate of ownership as in subdivision (d) provided, delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed, and the intended transfer shall be deemed to be in complete and not to be valid or effective for any purpose[,] [notwithstanding any provision of the Uniform Commercial Code; provided that a security interest in a motor vehicle shall be perfected as provided in the Uniform Commercial Code, sections 490:9-302(3)(b) and 490:9-302(4), and that the validity, attachment, priority, and enforcement of such security interest shall be governed by Article 9 of the Code.]
The bracketed language reflects the amendments found in HRS § 286-52(e) (1976).
[6] See supra note 5.
[7] Our review of the record indicates that there is substantial evidence to support the trial court's finding of fact (no. 19) that "[w]hile there were some delays in submitting Certificates of Ownership, Certificates of Registration and/or Notices of Transfer to the DMV [Department of Motor Vehicles] the evidence was not sufficient to show a policy or practice by Gilwick of delaying submission until monies owed under sales contracts for its automobiles were collected or that that was done in this case."
[8] Hawaii's no-fault law, Chapter 294, was recodified as HRS § 431:10C, Motor Vehicle Insurance Law, in 1987.
[9] HRS § 294-8(a)(1) (Supp.1984) provides:

No person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy. Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this chapter and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.
[10] See supra note 3.
[11] "Every owner who operates a motor vehicle on the public roadways will be required to take out a basic no-fault insurance policy to cover his own personal injury losses when operating his vehicle, losses of any other driver or passenger of his vehicle, and personal injury losses of any pedestrian that is injured in an accident involving his vehicle. In addition, required tort liability coverage is mandated." Hse.Conf. Comm.Rpt. No. 13, in 1973 House Journal, at 1219-20.
[12] Counsel for the Lehmans alluded to stacking during oral argument, however, we find no merit to such a position.