**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 13 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FAIRMONT SPECIALTY, a division of Crum & Forster Group, FKA Fairmont Insurance Company, agent of North River Insurance Company,<br><br>              Plaintiff - Appellee,<br><br>   v.<br><br>THE ESTATE OF KARINA HOOHULI, deceased,<br><br>              Defendant - Appellant,<br><br>   and<br><br>TESSIE KOTRYS,<br><br>              Defendant. | No. 09-16904<br><br>D.C. No. 1:08-cv-00450-JMS-LEK<br><br><br>MEMORANDUM[*] |
| FAIRMONT SPECIALTY, a division of Crum & Forster Group, FKA Fairmont Insurance Company, agent of North River Insurance Company,<br><br>              Plaintiff - Appellee, | No. 09-16921<br><br>D.C. No. 1:08-cv-00450-JMS-LEK |

---

   [*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

v.

THE ESTATE OF KARINA HOOHULI,
deceased,

          Defendant,

  and

TESSIE KOTRYS,

          Defendant - Appellant.

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted June 15, 2011
Honolulu, Hawaii

Before: ALARCÓN, WARDLAW, and N.R. SMITH, Circuit Judges.

Plaintiff-Appellee Fairmont Specialty sought declaratory judgment that it was not required to provide coverage under its Garage insurance policy for claims arising from a motor vehicle accident in which Defendant-Appellant Tessie Kotrys was injured and her passenger, Karina Hoohuli, was killed. The Garage Policy was issued to South Bay Auto and, as relevant here, covers only those vehicles that South Bay Auto "owns." The sole question confronting us is whether South Bay Auto "owned" the subject vehicle at the time of the accident, even though it had

already sold the vehicle to Kotrys.  The district court concluded that it did not, and that the defendants therefore were not entitled to coverage.  We affirm.

1.      Kotrys owned the subject vehicle at the time of the accident.  The word "owner," in its "plain, ordinary, and accepted sense in common speech," includes someone like Kotrys, who entered into a valid sales agreement, took possession of the vehicle, and obtained her own no-fault insurance.  *See Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co.* (*HIG*), 807 P.2d 1256, 1260 (Haw. 1991) (citing *Pac. Ins. Co. v. Or. Auto. Ins. Co.* (*Pacific*), 490 P.2d 899 (Haw. 1971)).  That South Bay Auto retained legal title to the vehicle is not dispositive of ownership for insurance purposes.  *See id.* at 1258-62; *Pacific*, 490 P.2d at 901-02.

Moreover, we must enforce "'the objectively reasonable expectations' of parties claiming coverage under insurance contracts, which 'are construed in accord with the reasonable expectations of a layperson.'"  *HIG*, 807 P.2d at 1260 (citations omitted).  In this case, the fact that Kotrys was required to obtain, and did obtain, her own no-fault insurance indicates that South Bay Auto did not intend, and Kotrys could not have reasonably expected, that South Bay Auto would

provide insurance coverage for the subject vehicle.[1]  *See id.*

2.      Defendants' reliance on the transfer-of-title provision in the motor vehicle registration statute and on the definition of "owner" under Hawaii no-fault insurance law is unavailing.  *See* Hawaii Revised Statutes (HRS) §§ 286-52(e), 431:10C-103.  The Supreme Court of Hawaii has clearly held that definitions found in the insurance and registration statutes are not determinative of ownership in the context of insurance coverage disputes.  *See HIG*, 807 P.2d at 1258-60 (discussing HRS § 286-52(e)); *id.* at 1261-62 (discussing HRS § 294-2(13), the predecessor statute to HRS § 431:10C-103); *Pacific*, 490 P.2d at 901-02 (discussing Revised Laws of Hawaii § 160-10(e), the predecessor statute to HRS § 286-52(e)).

3.      The Estate of Karina Hoohuli further argues that the definition of "owned by" in the "Personal Injury Protection" (PIP) endorsement to the Garage Policy supersedes the plain meaning of the word "owner."  This definition, however, does

---

[1] Defendants argue the sales agreement was not binding unless, and until, Kotrys's financing was approved.  However, there was no evidence in the record that any of the provisions relied upon by defendants would have allowed Kotrys to escape the contract.  Further, the evidence indicates that at the time of the accident: (1) Kotrys's financing *was* approved by her bank; (2) South Bay Auto (the only party with authority to do so) had not disavowed the agreement; and (3) South Bay Auto regarded Kotrys as owning the vehicle, even assisting her in procuring financing when it fell through in the past, rather than demanding the return of the vehicle.

not mandate a different result. Pursuant to it, the vehicle could have been "owned by" South Bay Auto, Kotrys, or both at the relevant time.

Allowing the PIP's definition of "owned by" to control would also lead to absurd results. In the "Liability Coverage" portion, the Garage Policy expressly excludes "customers" from the definition of an "insured." Given this language, it follows that the reasonable expectations of the parties were that the Garage Policy would not cover customers of South Bay Auto. It would be "absurd" for the Garage Policy to *exclude* customers from coverage in one part of the policy (liability coverage), only to provide a definition in another part (PIP) that would *include* that customer's vehicle among the vehicles covered under the overall policy, including for purposes of the liability coverage. *See HIG,* 807 P.2d at 1259 ("absurd and unjust" results should be avoided); *Pacific*, 490 P.2d at 901 (same).

4. Finally, the Garage Policy's exclusion of "customers" from the definition of an "insured" is not contrary to public policy. Numerous courts have concluded that clauses identical to the one in this case, which exclude "customers" from liability coverage, do not violate public policy as long as the statutory requirements

of compulsory and financial responsibility laws are met.[2]  Nor does this clause

contravene any statutory requirements, *see, e.g.*, HRS § 431:10C-301(a)(2),

because it provides that if the other insurance is absent or inadequate, then the

Garage Policy will cover up to the minimum required limits.  *See Harden*, 626

N.E.2d at 819 ("[A] policy provision which limits an insurer's liability for a

particular class of drivers to the statutory minimum is valid."); *accord Goodwin*,

880 So. 2d at 987-88; *Leader Nat'l Ins. Co.*, 545 N.W.2d at 455; *State Farm Mut.*

*Auto. Ins. Co.*, 733 N.Y.S.2d at 200; *Okla. Farmers. Union Mut. Ins. Co.*, 967 P.2d

at 482.

The Estate of Hoohuli's reliance on *Bowers v. Alamo Rent-A-Car, Inc.*, 965

P.2d 1274 (Haw. 1998), is misplaced.  While it may be impermissible for a rental

car company to shift primary responsibility to the driver's insurance company in

*all* cases, the insurer is within its rights to *limit* who qualifies as an "insured" under

its policy.  *See id.* at 1279 (the owner of an automobile may not meet legal

obligations by "contractually shifting responsibility"); *First Ins. Co. of Hawaii,*

---

[2]  *See, e.g.*, *Harden v. Monroe Guar. Ins. Co.*, 626 N.E.2d 814, 819 (Ind. Ct. App. 1993); *Goodwin v. W. Heritage Ins. Co.*, 880 So. 2d 985, 987-88 (La. Ct. App. 2004); *Leader Nat'l Ins. Co. v. Am. Hardware Ins. Group*, 545 N.W.2d 451, 455 (Neb. 1996); *State Farm Mut. Auto. Ins. Co. v. John Deere Ins. Co.*, 733 N.Y.S.2d 198, 200 (App. Div. 2001); *Okla. Farmers Union Mut. Ins. Co. v. John Deere Ins. Co.*, 967 P.2d 479, 482 (Okla. Civ. App. 1998).

*Inc. v. State*, 665 P.2d 648, 655 (Haw. 1983) ("'[L]iability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy.'" (citations omitted)). Thus, the Garage Policy's customer-exclusion clause is valid.

**AFFIRMED.**