STATE FARM FIRE & CASUALTY COMPANY, Plaintiff-Appellant,

v.

Matthew S. TRINGALI, Defendant-Appellee,

and

Glenn K. Makua, Defendant.

No. 81–4040.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 11, 1982.

Submitted June 29, 1982.

Decided Sept. 9, 1982.

Rehearing Denied Oct. 15, 1982.

J. Douglas Ing, Honolulu, Hawaii, for plaintiff-appellant.

Ian L. Mattoch, Honolulu, Hawaii, for defendant-appellee.

Before DUNIWAY and CANBY, Circuit Judges, and HALBERT,* District Judge.

DUNIWAY, Circuit Judge:

This is an appeal from a summary judgment for the insured in an action for a declaration of rights and liabilities under a compulsory automobile liability insurance policy. We affirm.

### I. *Facts.*

Glenn K. Makua intentionally drove his car against a stationary motorcycle on which Matthew S. Tringali was a passenger. Tringali brought a diversity action for personal injuries against Makua in the federal district court. Makua had automobile liability insurance with State Farm Fire & Casualty Company. The policy required State Farm "to pay all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons . . . *caused by accident* arising out of the . . . use, . . . of the owned motor vehicle; and to defend . . . any suit against the insured alleging such bodily injury . . . and seeking damages which are payable hereunder. . . ." (emphasis supplied). State Farm filed the present

action for a declaratory judgment that it has no obligation either to defend or to indemnify Makua, because the injuries to Tringali were not "caused by accident." Makua made no appearance. State Farm and Tringali each moved for summary judgment.

The district judge entered a summary judgment for Tringali without reaching questions of intent. He found that "the law of Hawaii is that an insurer of a motor vehicle involved in an accident must provide coverage for damages which the driver of the motor vehicle becomes obligated to pay, up to the limit of the policy, even if the accident may have been caused intentionally by the driver of the motor vehicle." He also found that "an insurer is liable regardless of the mental state of the insured." The judgment was entered as a final judgment under F.R.Civ.P. 54(b). State Farm appeals.

### II. *The Hawaii Statutes.*

Automobile insurance in Hawaii is regulated by various statutes. One is the Motor Vehicle Safety Responsibility Act, Hawaii Revised Statutes, chapter 287. This provides that a driver or owner who has an accident must post security unless certain conditions are met. H.R.S. § 287–5. One way to avoid posting security is to have an automobile liability policy with a certain minimum coverage. H.R.S. § 287–7. The Act also provides that a driver guilty of certain offenses, under certain conditions, may be required to provide proof of financial responsibility as a condition of retaining a driver's license. H.R.S. § 287–20. One acceptable form of proof is a certificate of insurance showing that the driver has a "motor vehicle policy" with a certain minimum coverage and an "omnibus clause," covering those who use the car with express or implied permission. H.R.S. § 287–25. This Motor Vehicle Safety Responsibility Act is still in effect insofar as it is consistent with the later enacted Chapter 294, Motor Vehicle Accident Reparations.

* The Honorable Sherrill Halbert, Senior United States District Judge for the Eastern District of California, sitting by designation.

H.R.S., Chapter 294, makes insurance compulsory for all who own or drive a car in Hawaii. Those who do must have insurance that satisfies certain specified conditions. H.R.S. § 294–8(a)(1). There must be provision for "no-fault benefits for *accidental harm*." H.R.S. § 294–4 (emphasis supplied). These benefits compensate for such expenses as doctors' fees and hospital charges and loss of earnings, and are subject to a maximum limit of $15,000 per person. H.R.S. § 294–2, 3. There must also be provision for "sums which the owner or operator may legally be obligated to pay for injury . . . which arises out of . . . use of the motor vehicle: (1) Liability coverage of not less than $25,000 for all damages arising out of *accidental harm* sustained by any one person as the result of any one *accident* applicable to each person sustaining *accidental harm* arising out of . . . use, . . . of the insured vehicle. . . ." H.R.S. § 294–10(a) (emphasis supplied). This statute also abolishes tort liability except in some circumstances, but it retains tort liability in cases of death or certain serious injuries, cases where expenses exceed the no-fault benefits, and cases where a person intentionally causes injury to another. H.R.S. § 294–6.

The insurance policy in the present case was not certified under the provisions of Chapter 287. Tringali and State Farm agree that the policy was issued under Chapter 294, not Chapter 287. It is clear that Makua and State Farm, the parties to the contract for insurance, intended that it be interpreted so as to provide the "not less than $25,000" coverage for "accidental harm sustained by any one person" that is required by H.R.S. § 294–10(a). Thus, in the present case, we are concerned with compulsory liability insurance rather than with no-fault insurance, even though Hawaii uses the label "no-fault insurance" for the whole package of insurance required by Chapter 294.

## III. *Compulsory Insurance and Intent.*

We have found no relevant decision by the Supreme Court of Hawaii, and the parties cite none. We delayed submission of this case in the hope that the question would be decided in *State Farm Mutual Automobile Insurance Co. v. Fernandez,* Civil No. 54527 (May 21, 1982). However, that case was decided on other grounds, so we must ourselves address a question of first impression in the law of Hawaii.

In *Hartford Accident and Indemnity Co. v. Wolbarst,* 1948, 95 N.H. 40, 57 A.2d 151, the Supreme Court of New Hampshire held that a policy which provided that it complied with "the provision of the Motor Vehicle Financial Responsibility Law of any state" covered injuries where a collision was intended by the insured. The relevant law was that of New Hampshire, and it spoke of "bodily injuries . . . *accidentally sustained*" (emphasis supplied). *Id.,* 57 A.2d at 152–53. Other courts have refused to follow this decision, saying that a state legislature, when it enacted a financial responsibility law, intended only to make compulsory for proven bad risks the usual insurance coverage against accidental harm and not to require them to have broader coverage. *Utica Mutual Insurance Co. v. Travelers' Indemnity Co.,* 1982, 223 Va. 145, 286 S.E.2d 225; *Snyder v. Nelson,* 1977, 278 Or. 409, 564 P.2d 681. However, these cases did not involve compulsory insurance.

In *Wheeler v. O'Connell,* 1937, 297 Mass. 549, 9 N.E.2d 544, the Supreme Judicial Court of Massachusetts interpreted a statutory requirement of insurance for "bodily injuries . . . arising out of the ownership, operation, maintenance, control or use upon the ways of the commonwealth of [a] motor vehicle. . . ." A policeman who stopped a car was pushed off its running board and won a civil suit against the driver for "wilful wanton and reckless behavior" where there was not "negligence or gross negligence." The court found that the driver's insurer was liable. It said that the words of the statute must be read broadly, and continued:

The purpose of the compulsory motor vehicle insurance law is not, like ordinary insurance, to protect the owner or operator alone from loss, but rather is to pro-

vide compensation to persons injured through the operation of the automobile insured by the owner.... And it has been pointed out by this court in many cases that the protection of the traveller on the public ways is the fundamental basis of the statute.... [I]f the purpose of the statute is to compensate the injured party rather than to save the operator of the vehicle from loss it is difficult to see why an injured person's rights should be affected by the fact that the operator's conduct was wilful, ... as distinguished from negligent. The evil intended to be remedied is as certainly present in the one case as in the other. 9 N.E.2d at 546. The court acknowledged that there was a rule of public policy in insurance law that makes void a policy indemnifying an insured against a liability for his wilful wrong, but held that the rule did not apply to compulsory automobile liability insurance. "The statute itself is declaratory of public policy applicable to compulsory insurance and supersedes any rule of public policy which obtains in ordinary insurance law." *Id.*, 9 N.E.2d at 547.

It is true that the section of Massachusetts law construed in *Wheeler* did not use the term "accident" or "accidental." However, the court did say that "if the policy under consideration had contained an express exception against liability for injuries caused by the wilful conduct of the operator, such a policy would be in violation of [a further section of Massachusetts insurance law], as containing an exception or exclusion 'as to specified accidents or injuries or causes thereof.'" *Id.* Here the term "accident" is used, and apparently includes wilful acts.

In *Nationwide Mutual Insurance Co. v. Roberts*, 1964, 261 N.C. 285, 134 S.E.2d 654, the Supreme Court of North Carolina interpreted a statute that did contain the word "accident" in the description of compulsory insurance. The insured had deliberately run down a person with whom he had previously had an argument. The law required insurance for damages "arising out of the ownership, maintenance or use of [a] motor vehicle ... subject to limits ... as follows: five thousand dollars ... because of bodily injury to one person *in any one accident* ...." *Id.*, 134 S.E.2d at 659 (emphasis supplied). The court said this: "The primary purpose of compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by the negligence of financially irresponsible motorists. Its purpose is not, like that of ordinary insurance, to save harmless the tortfeasor himself. Therefore, there is no reason why the victim's right to recover from the insurance carrier should depend upon whether the conduct of its insured was intentional or negligent.... The victim's rights against the insurer are not derived through the insured as in the case of voluntary insurance." *Id.* It added: "[W]e hold that injuries intentionally inflicted by the use of an automobile are within the coverage of a motor vehicle liability policy as defined by [the North Carolina statute]. The word *accident* as used in that section with reference to compulsory insurance is used in the popular sense and means any unfortunate occurrence causing injury for which the insured is liable." *Id.* at 660 (emphasis in original).

██ State Farm has not drawn our attention to any cases where intentionally caused injuries were found to be outside the scope of a compulsory automobile insurance scheme. We are persuaded that the adoption of a compulsory scheme of automobile liability insurance very strongly suggests a legislative intent that there be no exclusion of intentional acts of the insured. Compulsory automobile insurance is adopted for the protection of the victims. From the viewpoint of the victim, the mental state of the insured is irrelevant. The common objection to insuring one's self against liability for deliberately wrongful acts has little force in this context. Where compulsory automobile liability insurance statutes use the terms "accident" or "accidental" we should, if possible, read those terms in a way that does not exclude intentional acts of, or even intentional wrongs done by, the insured. An event is accidental if it is

neither expected nor intended from the viewpoint of the person who is injured. *Tomlin v. State Farm Mutual Automobile Liability Insurance Co.*, 1980, 95 Wis.2d 215, 290 N.W.2d 285, 289 (policy worded the same as that in the present case); *Nationwide Mutual Insurance Co. v. Roberts, supra.*

■ "Accidental harm" is defined in the statute of Hawaii as "bodily injury, death, sickness or disease caused by a motor vehicle accident to a person." H.R.S. § 294–2(1). There is nothing to suggest a restrictive reading of the term "motor vehicle accident." It can and should be read to include deliberately caused collisions and deliberate attempts to injure through a collision. The terms "accident" and "accidental" are used throughout Chapter 294, including those parts of the statute that describe no-fault benefits, H.R.S. § 294–3 to 5. We are convinced that the legislature of Hawaii could not have intended no-fault benefits to depend upon a determination of the state of mind of the drivers of automobiles. That would have been inconsistent with the no fault concept. The words should be read in the same way throughout the statute.

State Farm intended that the policy issued to Makua should satisfy the requirements of Chapter 294. The policy speaks of injury "caused by accident." It gives no definition of "accident." In particular it does not give a definition of the sort now suggested by State Farm: "an unexpected happening without intention or design" or something "neither expected nor intended from the viewpoint of the insured." Nor does the policy contain any clause that expressly excludes from coverage intentional injuries or injuries caused by intentional acts.

State Farm quotes from the debate in the Hawaiian Legislature when the House adopted the report of the Conference Committee:

Representative O'Connor responded:

"... In this State today, punitive or exemplary damages are recovered against one who operates a motor vehicle in a wanton and reckless manner with gross negligence; for example, the drag racer who loses control of his car on one of our streets or something of that nature.

For that reason, from time immemorial, there has been no insurance protection for that type of action. Even under our bankruptcy law, such a judgment cannot be wiped out by bankruptcy. These are damages which are given in punishment against the driver who acts in that fashion. For that reason, they fall outside the scope of any insurance plan and that is why they are exempted in this plan.

I would suggest that the comments made by the prior speaker that they return the whole area of tort under a simple negligence scheme of this State is entirely erroneous."

Representative Wong then inquired where this particular individual would get his relief.

Representative O'Connor replied that they would get it from the pocketbook of he who acts wantonly, recklessly or negligently on our streets with his motor vehicle and not from his insurance coverage.

House Journal, 1973 Regular Session, Seventh Legislature of Hawaii, p. 702.

It is possible to read these remarks to support State Farm's position. However, it would be wrong to do so, for two reasons. First, the parties agree that Representative O'Connor was answering a question about what is now H.R.S. § 294–6(d), a section that retains the tort system for actions against one who "intentionally causes injury." The point to be answered seems to have been that the section restricted the no-fault system too much. Those who opposed the bill in the House demanded a pure no-fault system rather than the hybrid favored by the majority. Representative O'Connor's remarks are to be read as an explanation that a tort action for intentional wrongs must be preserved because the no-fault system did not provide punitive damages. Second, whether or not that interpretation is correct, Representative O'Connor can be understood as asserting that the bill did not change the traditional

rule that insurance will not indemnify against punitive damages, and not as asserting that it did not change the other traditional rule that insurance will not indemnify any claim arising from injuries intended by the insured. We do not decide the question of whether the law of Hawaii requires an automobile liability insurer to indemnify its insured against punitive damages.

The question here decided in favor of the insured has not been considered by the Supreme Court of Hawaii. To our knowledge it has been considered by only two courts sitting in Hawaii—the state trial court in *Fernandez, supra,* and the federal district court in this present case. Both courts reached the same result as we do here. Of course, we are not bound by those decisions, and, in fact, we have reached our conclusion independently. In general, we agree with State Farm that the rights of parties should not turn upon the chance discovery of an unreported trial court decision. However, we are sure that, in this automobile insurance case, State Farm would be well aware if there were "a dozen adverse decisions outstanding" but unreported. We do find some reassurance in the coincidence of our reasoning with that of judges closer to the law of Hawaii. We owe their views as to the law of Hawaii some deference. We need not here decide how much, because we agree with them. We do not suggest that we would owe them no deference if we did not agree with them. *Cf. Insurance Co. of North America v. Howard,* 9 Cir., 1982, 679 F.2d 147, 150; *Bank of California v. Opie,* 9 Cir., 1981, 663 F.2d 977; *Power v. Union Pacific R.R. Co.,* 9 Cir., 1980, 655 F.2d 1380, 1382; *Gaines v. Haughton,* 9 Cir., 1981, 645 F.2d 761; *Owyhee Grazing Ass'n v. Field,* 9 Cir., 1981, 637 F.2d 694; *Takahashi v. Loomis Armored Car Service,* 9 Cir., 1980, 625 F.2d 314; *Insurance Co. of North America v. Thompson,* 9 Cir., 1967, 381 F.2d 677, 681; *Minnesota Mutual Life Ins. Co. v. Lawson,* 9 Cir., 1967, 377 F.2d 525, 526; *Bellon v. Hinzig,* 9 Cir., 1963, 347 F.2d 4, 6; *Gumataotao v. Guam,* 9 Cir., 1963, 322 F.2d 580, 582; *California v. United States,* 9 Cir., 1956, 235 F.2d 647, 654.

We do not find the case of *State v. Liuafi,* 1981, —— Haw.App. ——, 623 P.2d 1271, 1282, persuasive here. That case dealt with the meaning of the word "accident" in a statute making it a criminal offense for one involved in an accident resulting in injury or death to leave the scene without giving information and rendering aid. There the statute defined a crime, and the court refused to equate "accident" with the intentional use of a car as a murder weapon. The court was simply following the general rule against an expansive reading of a criminal statute. There is no such rule regarding the construction of an insurance policy. A criminal statute is construed against the state; an insurance policy is construed against the insurance company.

Affirmed.