KAREN METHVEN–ABREU, Plaintiff–Appellee, v. THE HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., dba Hawaiian Insurance Companies, Defendant–Appellant

NO. 15478

(CIV. NO. 89–288K)

JULY 27, 1992

LUM, C.J., WAKATSUKI, MOON, KLEIN, AND LEVINSON, JJ.

386

## OPINION OF THE COURT BY MOON, J.

Defendant–appellant The Hawaiian Insurance & Guaranty Company, Ltd. (HIG) appeals the trial court's orders granting plaintiff–appellee Karen Methven–Abreu's (Abreu) motion for summary judgment and denying HIG's cross motion for summary judgment. Briefly stated, Abreu filed claims for no–fault and uninsured motorist benefits as a result of injuries she sustained in a one–car accident. HIG denied coverage based on certain exclusions contained in both the no–fault and uninsured motorist provisions of the policy at issue. Abreu filed this action seeking a declaration from the court with respect to coverage. The trial court ruled that Abreu was entitled to both no–fault and uninsured motorist benefits.

On appeal, the dispositive issues are whether the policy exclusions are valid and would thus preclude Abreu from recovering no–fault and uninsured motorist benefits. We conclude that the

no–fault policy exclusion is valid and does not violate Hawaii's No–Fault Law, Hawaii Revised Statutes (HRS) Chapter 294 (1985) [1] (no–fault law). Thus, Abreu is not entitled to receive no–fault benefits. We further hold that the exclusion contained in the uninsured motorist provision is void as against public policy and cannot operate as a bar to Abreu's recovery of such benefits. However, we find there are genuine issues of material fact with respect to Abreu's claim for uninsured motorist benefits. We therefore vacate the trial court's award of uninsured motorist benefits to Abreu and remand for further proceedings consistent with this opinion.

## I. FACTS

On February 5, 1988, Abreu was injured in a one–car accident when her uninsured 1966 Volkswagen ran off a roadway in Kona. Although there is a dispute regarding who was driving the vehicle at the time of the accident,[2] for purposes of our discussion regarding the coverage issues, we assume that Abreu was a passenger and the vehicle was being driven by Danny McClintock (McClintock), who died as a result of the accident.

At the time of the accident, Abreu was married to James Abreu and lived with him in the same household. James Abreu owned a 1986 Chevrolet Camaro insured under a policy issued by HIG. James Abreu was the sole named insured and the Camaro was the only vehicle declared in the policy. In addition to no–fault coverage, the policy also provided uninsured motorist protection.

Abreu filed an application with HIG for no–fault and uninsured motorist benefits based upon her status as an insured member

---

[1] Chapter 294 was repealed in 1987 and recodified in Chapter 431:10C. Recodification, which became effective July 1, 1988, was subsequent to the accident in this case. Therefore, the statutes reflected in this opinion refer to Chapter 294.

[2] *See infra* section III.

of her husband's household. HIG denied Abreu's claims for no–fault benefits based upon a policy provision that precluded recovery by a relative living in the insured's household who sustained injury while occupying an uninsured motor vehicle owned by the relative (resident relative exclusion). HIG also denied Abreu's claims for uninsured motorist benefits based upon another policy exclusion that precluded recovery because Abreu's vehicle was not insured for such coverage under the policy (owned vehicle exclusion).

Abreu subsequently filed a declaratory judgment action against HIG to determine coverage under the policy. HIG counter-claimed asserting that Abreu was not entitled to coverage under her husband's policy. Abreu filed a motion for summary judgment contending that she was entitled to receive benefits based on her status as an insured member of her husband's household and that HIG had denied coverage in bad faith. HIG, in turn, filed a cross motion for summary judgment asserting that the resident relative exclusion and the owned vehicle exclusion precluded Abreu's recovery of no–fault and uninsured motorist benefits.

Following a hearing on the consolidated summary judgment motions, the trial court issued two separate orders, one granting Abreu's summary judgment motion and the other denying HIG's cross motion for summary judgment. HIG timely appeals both orders.

## II.

We review *de novo* summary judgment proceedings. *Iuli v. Fasi*, 62 Haw. 180, 184, 613 P.2d 653, 656 (1980). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party clearly demonstrates that he or she is entitled to judgment as a matter of law. Hawaii Rules of Civil Procedure 56(c); *Bidar v. Amfac, Inc.*, 66 Haw. 547, 553, 669 P.2d 154, 159 (1983).

## A.  No–Fault Benefits and the Resident Relative Exclusion

The HIG policy's no–fault section provides, in relevant part:

We will pay in accordance with the Hawaii No–Fault Law, no–fault benefits on account of *accidental harm* sustained by an *eligible injured person* and caused by an accident arising out of the *operation, maintenance, or use* of a *motor vehicle* as a vehicle.

(Emphasis in original.)  The resident relative exclusion states:

We do not provide No–Fault Benefits:

. . . .

2.  for *accidental harm* sustained by any *relative* while *occupying a motor vehicle* which is *owned by* such *relative* and for which the security required by the Hawaii No–Fault Law is not in effect.

(Emphasis in original.)

We construe an insurance contract according to the entirety of its terms and conditions as set forth in the policy.  HRS § 431:10C–237; *see also Smith v. New England Mut. Life Ins. Co.*, 72 Haw. 531, 534, 827 P.2d 635, 636 (1992).  To ascertain whether coverage exists in insurance coverage disputes, we must look to the language of the insurance policy "consistent with the insurer and insured's intent and expectations." *Hawaiian Ins. & Guar. Co. v. Financial Sec. Ins. Co.*, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991) (citation omitted).

The policy definition of "accidental harm" includes bodily injury to a person caused by a motor vehicle accident.  "Relative" includes the spouse of the named insured residing in the same household.  "Occupying" is defined as "in, upon, getting in, on, out or off."  "Motor vehicle" is any vehicle which is required to be registered under HRS Chapter 286.  "Owned by" means the person

who holds legal title to a motor vehicle. The policy defines an insured motor vehicle as one which the policyholder is "required to maintain security under the provisions of the Hawaii No–Fault Law." [3] Thus, the phrase "and for which security required by the Hawaii No–Fault Law is not in effect" is reasonably interpreted to mean an uninsured motor vehicle.

When applying these definitions to the policy exclusion, clearly Abreu is precluded from recovering no–fault benefits under her spouse's HIG policy because she sustained bodily injury while occupying an uninsured vehicle she owned. The language of the exclusion is plain and unambiguous and negates any claim that Abreu had an "objectively reasonable expectation" of coverage. *Id.* at 87–88, 807 P.2d at 1260. However, to determine the validity of this exclusion, we must construe it in conjunction with the language and legislative intent of Hawaii's no–fault law.

Pursuant to Hawaii's no–fault law, an insured person who suffers loss from accidental harm arising out of the operation, use or maintenance of a motor vehicle within the state, has a right to no–fault benefits. HRS § 294–3(a). [4] This right, however, is not absolute. An insurer's obligation to pay no–fault benefits under HRS § 294–4 [5] is qualified by HRS § 294–5(c), which provides in

---

[3] Under the policy at issue, "insured motor vehicle" means "a motor vehicle with respect to which: 1. the bodily injury liability insurance of the policy applies and for which a specific premium is charged, and 2. you are required to maintain security under the provisions of the Hawaii No–Fault Law."

[4] HRS § 294–3(a) provides that "[i]f the accident causing accidental harm occurs in this State, every person, insured under this chapter, and the person's survivors, suffering loss from accidental harm arising out of the operation, maintenance or use of a motor vehicle has a right to no–fault benefits."

[5] HRS § 294–4, entitled "Obligation to pay no–fault benefits," provides in pertinent part as follows:

    (1)  *Except as otherwise provided in section 294–5(c):*

          (A)  In the case of injury arising out of a motor vehicle accident to any person, including the owner, operator, occupant, or user of the

pertinent part that "[n]o payment of no–fault benefits may be made to the occupants of a motor vehicle other than the insured motor vehicle." However, despite the clear and unambiguous language of HRS § 294–5(c), Abreu maintains that this section does not bar her from recovering no–fault benefits because HRS § 294–5(d) provides that "[i]f there is no insurance on the vehicle [occupied by the injured person at the time of the accident], *any other no–fault insurance applicable to the injured person shall apply*[.]" (Emphasis added.) Abreu contends that but for the resident relative exclusion, the HIG policy qualified as "other no–fault insurance applicable" to her because of her status as an "insured" under her husband's HIG policy.

Statutory language "must be read in the context of the entire statute and construed in a manner consistent with the purpose of the statutes." *Pacific Ins. Co. v. Oregon Auto. Ins. Co.*, 53 Haw. 208, 212, 490 P.2d 899, 902 (1971). "[Our] primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree." *Kang v. State Farm Mut. Auto. Ins. Co.*, 72 Haw. 251, 254, 815 P.2d 1020, 1022 (1991) (citation omitted). Moreover,

> [i]t is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute.

---

insured motor vehicle, or any pedestrian (including a bicyclist) . . . who sustains accidental harm as a result of the operation, maintenance, or use of the vehicle, the insurer shall pay, without regard to fault, to the person an amount equal to the no–fault benefits payable to the person as a result of the injury[.]

(Emphasis added.)

*Camara v. Agsalud*, 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984) (citations omitted). To accept Abreu's position that HRS § 294–5(d) permits recovery of no–fault benefits under her husband's policy, despite the plain language of HRS § 294–5(c), would render HRS § 294–5(c) "superfluous, void, or insignificant." *Id.*

By disregarding the significance of HRS § 294–5(c) and literally applying HRS § 294–5(d) as Abreu suggests, the effectiveness and objectives of the no–fault law would be undermined. The purpose of Hawaii's no–fault law is to

> provide motor vehicle accident victims assured, adequate and prompt reparation for certain economic losses without regard to fault. The clear objectives of the law are to: (1) institute insurance reform in order to (a) expedite the settling of all claims, (b) create a system of reparations for injuries and loss arising from motor vehicle accidents, (c) compensate these damages without regard to fault, and (d) modify tort liability for these accidents; and (2) to reduce the cost of motor vehicle insurance by establishing a uniform system of motor vehicle insurance.

*Hawaiian Ins. & Guar. Co. v. Financial Sec. Ins. Co.*, 72 Haw. at 91, 807 P.2d at 1261 (quoting *Parker v. Nakaoka*, 68 Haw. 557, 559, 722 P.2d 1028, 1030 (1986) (citations omitted)); *see also* HRS § 294–1(a).

If we were to compel HIG to pay no–fault benefits to Abreu under the circumstances of this case, we would create little incentive for multi–vehicle households to insure each of their vehicles if an insurance policy on one vehicle would provide no–fault benefits to them if they were injured while occupying any of their other uninsured vehicles.

Moreover, allowing Abreu to recover no–fault benefits in this case would frustrate one of the legislature's original and continu-

ing objectives,[6] that is, to reduce motor vehicle insurance costs to the public. If the right to recover no–fault benefits was expanded to include unidentified, uninsured vehicles of a multi–vehicle household, which only insured one vehicle, insurers would have to speculate when assessing risks under no–fault policies. Such broad and unidentified risks would undoubtedly compel insurance companies to raise their premiums.

We find that the resident relative exclusion contained in HIG's policy is consistent with HRS § 294–5(c) and the legislative intent of Hawaii's no–fault law. We therefore hold that the policy exclusion is valid.[7] Consequently, HIG's no–fault policy does not qualify as "other no–fault insurance" under HRS § 294–5(d).

### B. Uninsured Motorist Benefits and The Owned Vehicle Exclusion

The uninsured motorist provision of the policy provides:

We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury:

1. Sustained by a *covered person*; and
2. Caused by an accident.

(Emphasis in original.) The definition of "uninsured motor vehicle" excludes any vehicle "[o]wned by or furnished or available for

---

[6] Certain bills recently introduced and acted upon by the 1992 State Legislature relating to no–fault insurance indicate that "[t]he legislature finds that the current levels of premium rates force large numbers of motorists to go uninsured and causes financial hardships for others who pay their premiums." S. 2361, S.D. 2, § 1 (1992). Conference Committee Report No. 150 relating to House Bill No. 3974, also relating to no–fault insurance, states that "[t]he purpose of the bill is to reduce and stabilize the cost of motor vehicle insurance in Hawaii."

[7] By this opinion, we do not intimate in any way that insurers of occupants of uninsured vehicles may now exclude such occupants from receiving no–fault benefits under HRS § 294–5(c). Our ruling today is limited to the exclusion of owner–occupants like Abreu.

the regular use of you or any *family member*." (Emphasis in original.) The term "family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household." Thus, under the stated definition, Abreu's Volkswagen was not an uninsured vehicle.

The policy also contains an owned vehicle exclusion applicable to uninsured motorist benefits, which provides in pertinent part as follows:

> A.  We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:
>> 1.  While *occupying*, or when struck by, any motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy. . . .

(Emphasis in original.)  Under the aforementioned exclusion, Abreu is precluded from recovering uninsured motorist benefits. However, based on our decision in *Kau v. State Farm Mutual Automobile Insurance Co.*, 58 Haw. 49, 564 P.2d 443 (1977), we find the policy exclusion void.

In *Kau*, the plaintiff, while driving her mother's uninsured vehicle, was struck by an uninsured motorist. The plaintiff sought uninsured motorist benefits under her father's policy. The policy contained an owned vehicle exclusion which states, "[t]his [uninsured motorist] insurance does not apply: . . . (b) To bodily injury to an insured while occupying . . . a land motor vehicle owned by the named insured or any resident relative of the same household, if such vehicle is not an owned motor vehicle." *Id.* at 50, 564 P.2d at 444.  An "owned motor vehicle" was "the motor vehicle or trailer described in the declarations." *Id.*

In *Kau*, this court acknowledged that Hawaii's uninsured motorist statute, HRS § 431–448,[8] was to be "liberally construed

---

[8] HRS § 431–448 provides in pertinent part as follows:

to accomplish its remedial purposes and give effect to the legislative intent." *Id.* at 51, 564 P.2d at 444 (citation omitted). We determined that the owned vehicle exclusion denied the plaintiff full protection of the uninsured motorist statute. We also determined that "[a] literal reading of the statute leaves no room for the exclusion which appellant attempted to write into its policy[,]" *id.*, and concluded that the exclusion was void because it was repugnant to the statute.

In the instant case, we must construe the identical statute, HRS § 431–448. In so doing, we note that the only statutory exclusion is when the named insured rejects uninsured motorist coverage in writing. HRS § 431–448(a).[9] Applying *Kau*, HIG's owned vehicle exclusion clearly narrows the coverage Abreu is entitled to receive under the statute, and therefore the exclusion is void as against public policy. As an insured under her husband's policy, Abreu was covered for purposes of the uninsured motorist benefits whether or not she was injured while occupying a vehicle specifically declared under the policy. *See generally Allstate Ins. Co. v. Morgan*, 59 Haw. 44, 47, 575 P.2d 477, 479 (1978).

In attempting to distinguish *Kau*, HIG submits that Abreu should be precluded from recovering uninsured motorist benefits

---

(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this State ... unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287–7 ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, provided that the coverage required under *this section shall not apply where any insured named in the policy shall reject the coverage in writing.*

(Emphasis added.)

[9] *See supra* note 8.

because she was financially irresponsible in not insuring her vehicle. We disagree. HIG fails to point to any statutory language or legislative history in support of its position. Although Abreu's failure to obtain insurance is in violation of HRS § 294–8(a)(1), and would subject her to the penalty provisions of HRS § 294–39(a), there is no indication that the legislature intended the denial of benefits as punishment for such violation.

Moreover, unlike Abreu's claim for no–fault benefits, which under HRS § 294–5(c) is excludable, we find no similar statutory exclusion regarding her claim for uninsured motorist benefits. The legislative intent in mandating the availability of uninsured motorist coverage is clear.

> An insurance company offering uninsured motorist protection engages to pay to the insured, spouse or minor children of either, resident in the named insured's household, sums not to exceed the stated limits, for any uncollectible valid claim or unsatisfied judgment for damages resulting from bodily injury or death, resulting from the ownership, maintenance or use of an automobile. *The claim becomes payable when the innocent victim shows that his claim is valid, that is, that there is legal liability on the person alleged to be responsible and that the claim cannot be collected because of the financial irresponsibility of that person* or because of the inability to identify the person or persons responsible.

*Kau*, 58 Haw. at 51, 564 P.2d at 444 (quoting Hse. Stand. Comm. Rep. No. 194, in 1965 House Journal, at 582) (emphasis added)). In other words, persons insured under a policy providing uninsured motorist protection who are injured in an automobile accident, through no fault of their own, may recover uninsured motorist benefits. However, such persons must first establish that the alleged tortfeasor is uninsured and legally liable. The financial irresponsibility of injured persons in not insuring their own

vehicles is irrelevant to the determination of eligibility for uninsured motorist protection.

A literal reading of the uninsured motorist statute, coupled with the clear intent of the legislature, leads us to conclude, as we did in *Kau*, that the HIG policy's owned vehicle exclusion is void as against public policy and cannot operate as a bar to Abreu's recovery of uninsured motorist benefits.

## III.

Finally, we address whether there are genuine issues of material fact which preclude summary judgment in favor of Abreu on her claim for uninsured motorist benefits.

For summary judgment purposes, "a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *City & County v. Toyama*, 61 Haw. 156, 158, 598 P.2d 168, 169 (1979) (citations omitted).

According to HIG, there are four genuine issues of material fact: (1) whether Abreu met the medical–rehabilitative threshold requirements; (2) who was driving the vehicle; (3) whether McClintock was insured; and (4) whether McClintock was negligent, and if so, whether his negligence was a legal cause of the accident. Except for the threshold question, we agree with HIG that genuine issues of material fact exist with respect to Abreu's claim for uninsured motorist benefits.

To maintain a personal injury action and recover uninsured motorist benefits from HIG, Abreu must meet the medical–rehabilitative threshold requirements.[10] HRS § 294–6(b). In her application for benefits, Abreu stated she incurred over $15,000 in medical bills. HIG has produced no evidence to dispute the amount and has failed in its "burden of proof to rebut the

---

[10] Pursuant to HRS § 294–10(b), the medical–rehabilitative threshold established by the insurance commissioner for 1988 was $6,400.00.

presumption" that these expenses were reasonable and necessary. HRS § 294–6(a). Thus, we conclude as a matter of law that Abreu has met the threshold requirement.

HIG contends that "the record reflects that [Abreu], not McClintock, was operating the motor vehicle." In support of its contention, HIG points to a portion of the police report [11] which indicates Abreu stated that when she regained consciousness, "she was sitting in the driver's side seat." Abreu, on the other hand, maintains that McClintock was driving at the time of the accident. Abreu argues that 1) it is her recollection that McClintock was driving; 2) the police report lists McClintock as the driver; 3) when the police arrived at the scene, McClintock was found lying closest to the left side of the vehicle with his legs sticking through the open driver's door window; and 4) McClintock's injuries were consistent with having impacted the steering wheel. [12]

---

[11] We acknowledge that the police report may not have been admissible evidence to support or oppose a motion for summary judgment as required under Hawaii Rule of Civil Procedure 56(e). We recognize that on remand this technical violation could be easily remedied and believe that the trial court, on a renewed motion for summary judgment or motion for directed verdict at trial, would again rule that no genuine issues of material fact exist. Moreover, even if we were to disregard the police report because it is not properly before us, our conclusion would remain the same, that is, genuine issues of material fact exist regarding Abreu's claim for uninsured motorist benefits, thus precluding summary judgment and requiring remand. We note that both parties referred to and relied on the police report for their respective positions at the trial level and neither objected to its use. Therefore, rather than remanding without explanation, we believe our discussion regarding the issues of who was driving, and if McClintock was driving, whether his negligence, if any, was the legal cause of the accident, would be instructive and would serve judicial economy.

[12] The autopsy report, attached to the police report, reveals that McClintock suffered a lacerated thoracic aorta, pericardial sac, and liver; fractures of the bilateral clavicle, ribs and fingers; multiple sites of hemorrhage; and multiple external abrasions. On the other hand, Officer Kahiwa's police report indicates that according to Dr. Beshoner, Abreu sustained a small pelvic fracture, multiple injuries to the left side of her arm, and a severe left upper bone fracture.

The record reveals that three males came upon the scene of the accident and two of them reported that they observed a male and female lying on the roadway next to the driver's side of the vehicle. The police report also indicates that at the time of the accident, the vehicle ran off the roadway knocking down some small trees or bushes, overturned, and came to a stop partially on the roadway "possibl[y] ejecting both occupants." Although the injuries sustained by McClintock may arguably be consistent with having impacted the steering wheel, his injuries may be equally consistent with having been ejected from the vehicle. To conclude that McClintock's injuries prove that he was the driver of the vehicle without any evidence presented by expert testimony is pure speculation. Based on our review of the record, we find that a genuine issue of fact exists regarding who was driving the vehicle.

Turning to the issue of McClintock's insurance status, in order to collect uninsured motorist benefits Abreu has the burden of showing that McClintock was uninsured. *Brown v. United Servs. Auto. Ass'n*, 684 P.2d 1195, 1201–02 (Okla. 1984); *see generally National Union Fire Ins. Co. v. Olson*, 69 Haw. 559, 564, 751 P.2d 666, 669 (1988). The record on appeal is void of any evidence as to whether McClintock was insured or uninsured. We therefore conclude that this is also a genuine issue of material fact.

Finally, we agree with HIG that Abreu has failed to demonstrate as a matter of law that McClintock was negligent and his negligence was a legal cause of the accident. Abreu argues that the police report "provides copious evidence regarding Danny McClintock and his conduct which would lead jurors to conclude that he was negligent in his operation of the Volkswagen." Such evidence, Abreu submits, includes McClintock's blood alcohol level, which the police report indicates was "well above the intoxicating level," and the determination by the police that "excessive speed . . . was a contributing factor in causing the accident."

First, the record shows McClintock's blood alcohol level was .286%, an indication of intoxication;[13] however, driving a vehicle with a blood alcohol level of .286% does not establish actionable negligence or contributory negligence unless a causal relationship is established between the driver's alleged intoxication and the accident. *McKenna v. Volkswagenwerk Aktiengesellschaft*, 57 Haw. 460, 467, 558 P.2d 1018, 1023–24 (1977). Evidence of McClintock's having consumed beer before driving and of his blood alcohol level does not automatically lead to the conclusion that his alleged intoxication legally caused the accident. "Although intoxication may be the cause of negligence, the question whether the acts of an intoxicated person are negligent is not determined by the fact of his intoxication but requires consideration of his conduct under the circumstances." *Id.* at 467–68, 558 P.2d at 1024. It is common knowledge that the judgment and behavior of persons who have been drinking may vary depending on that person's level of tolerance to alcohol, which may be dependent on such factors as body size, weight, and metabolism. In this case, there is a complete absence of any evidence presented by Abreu or any other witness regarding McClintock's behavior just prior to the accident. There is also no expert testimony in the record regarding how a person such as McClintock would have behaved with a .286% level of blood alcohol.

Second, the record reveals that the vehicle was allegedly driven at 30 miles per hour or, as characterized by the police, at "excessive speed."[14] The reference to "excessive speed" is conclusionary and ambiguous. Further, we note that Abreu, on her application for benefits, described the accident as "[d]river hit pothole

---

[13] In Hawaii, a person is deemed to be under the influence of intoxicating liquor if he or she has a blood alcohol level of "0.10 per cent or more." HRS § 291–4(a)(2).

[14] Although the police report refers to "excessive speed," Abreu estimated the speed of the vehicle at 30 miles per hour in her statement to the police.

and lost control of the car, ran off roadway, and overturned." The police report reveals that the accident occurred at night and the area was "[d]ark–no lights," and thus inferentially visibility was impaired and the "pothole" may not have been visible. Moreover, there is no evidence of the speed limit, or that McClintock had driven on the roadway prior to the accident, or that he had notice of hazardous road conditions, or any other evidence that would permit a conclusion, as a matter of law, that 30 miles per hour was excessive under the circumstances.

We conclude, on the record before us, that there are genuine issues of material fact regarding the necessary causal relationship between McClintock's alleged intoxication and excessive speed and the accident.

## IV.

Based on the foregoing, we hold that HIG's resident relative exclusion applicable to no–fault benefits is valid. Thus, we reverse the trial court's granting of summary judgment in favor of Abreu and remand with instructions that summary judgment be entered in favor of HIG on the issue of no–fault benefits. We also hold that the owned vehicle exclusion contained in the uninsured motorist provision of the policy is void, and that a genuine issue of material fact exists concerning the identity of the driver of the vehicle in question. If McClintock is determined to be the driver, genuine issues of material fact also exist regarding his insurance status and whether his negligence, if any, was a legal cause of the accident. Therefore, we vacate the trial court's award of uninsured motorist benefits to Abreu and remand for further proceedings, consistent with this opinion, with respect to Abreu's uninsured motorist claim.

*Gary S. Miyamoto* (*Roy Y. Yempuku* with him on the briefs) for defendant–appellant.

*Pedar C. Wold* (*Robert P. Marx* and *Michael S. Carpenter* with him on the brief) for plaintiff–appellee.