STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff,

v.

Wendell A. PICHAY, Dennis Du Pont, and Tammy Lin Du Pont, Defendants.

Civ. No. 93–00056 DAE.

United States District Court, D. Hawaii.

Oct. 7, 1993.

Richard B. Miller, Henry E. Klingeman, McCorriston Miho & Miller, Honolulu, HI, for plaintiff.

Rodney K.F. Ching, Fonseca, Mills & Ching, Honolulu, HI, for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard plaintiff's motion on October 4, 1993. Henry E. Klingeman, Esq. appeared on behalf of plaintiff; Rodney K.F. Ching, Esq. appeared on behalf of defendants Dennis and Tammy Lin Du Pont. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS plaintiff's motion for summary judgment.

### BACKGROUND

The facts in this case are not in dispute. On or about May 24, 1990, at approximately 3:30 a.m. in a shopping center parking lot in Pearl City, Hawaii, defendant Wendell A. Pichay ("Pichay") fired several shots in the direction of defendant Dennis Du Pont, an on-duty police officer with the City and County of Honolulu. Pichay has alleged that he fired the shots to scare Officer Du Pont and others. Du Pont was injured in the shooting. At the time of the shooting, Pichay was in a vehicle owned by his mother, and insured under State Farm automobile liability insurance policy no. 483757F2651, as described in policy form no. 9851.1 (the "State Farm policy"). Pichay was insured under this policy. Du Pont was not in a vehicle at the time he was injured.

In the criminal proceeding resulting from the shooting, Pichay pled guilty and was convicted of attempted murder in the first degree. Pichay was sentenced to life imprisonment without possibility of parole.[1] The Du Ponts later filed a complaint against Pichay seeking damages arising out of the shooting, alleging that his actions constituted

---

1. In a separate case before this court Pichay was convicted of the first degree murder of an on-duty marine sentry and sentenced to life in prison without possibility of parole.

assault, battery, attempted murder or manslaughter, reckless endangering, intentional infliction of emotional distress, negligence and/or gross negligence. Pichay has defaulted in this underlying action, which resulted in a court-annexed arbitration, and an award to the Du Ponts of over $52,000 in general and special damages and $100,000 in punitive damages. No appeal or demand for trial de novo was taken from the award, which thus constitutes a final state court judgment.

State Farm filed its complaint for declaratory relief on January 25, 1993, seeking an order that (1) State Farm is not obligated to indemnify Pichay for any liability he may incur as a result of the shooting of Dennis Du Pont; (2) State Farm has no liability or obligation whatsoever to the Du Ponts as a result of the shooting; and (3) State Farm is not obligated to provide a defense for Pichay of litigation as to any claims against Pichay asserted in the underlying complaint and/or as a result of the shooting. On April 22, 1993, this court granted State Farm's Motion for Entry of Default Judgment against Pichay, on the grounds that State Farm owed no duty to defend, indemnify, or otherwise cover defendant Pichay for any claims asserted in this action or any other claims asserted by or against Pichay.

By its present motion, State Farm moves for summary judgment against the remaining defendants, the Du Ponts, seeking an order that it is not obligated under the insurance policy to defend or indemnify Pichay, or otherwise pay any sums to the Du Ponts, for any injuries or claims arising out of the May 24, 1990 shooting, including without limitation the state court civil judgment entered against Pichay.

### STANDARD OF REVIEW

■ Rule 56(c) provides that summary judgment shall be entered when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The evidence and inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment. *Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1362 (9th Cir.1985). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* 477 U.S. at 322, 106 S.Ct. at 2552.

■ Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citation omitted).

■ At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: whether the evidence presents a sufficient disagreement to require submission to the trier of fact or whether it is so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

### DISCUSSION

■ State Farm contends that it is not obligated to provide coverage because the injuries suffered by the Du Ponts were not caused by an "accident," as required by the State Farm policy and the governing Hawaii

statutes. The State Farm policy at issue in this case provides, in pertinent part, as follows:

We will:

1. pay damages which an **insured** becomes legally obligated to pay because of:

a. **bodily injury** to others

b. damage to or destruction of property including loss of its use,

caused by accident resulting from the ownership, maintenance or use of **your car**; and

2. defend any suit against an **insured** for such damages with attorneys hired and paid by us.

State Farm Car Policy Form 9851.1 at 5 (emphasis in the original). The court must construe the State Farm insurance contract according to the entirety of its terms and conditions as set forth in the policy. *Methven-Abreu v. Hawaiian Ins. & Guar. Co.*, 73 Haw. 385, 390, 834 P.2d 279, 283 (1992).

With respect to bodily injury liability insurance coverage, the policy at issue here is governed by those provisions of the Hawaii Insurance Code that were in effect as of the policy's effective date. *See National Union Fire Ins. Co. v. Ferreira*, 71 Haw. 341, 344, 790 P.2d 910, 912 (1990) (stating that the statutory provisions are read into each policy issued thereunder, and become part of the insurance contract with full binding effect upon each party). The Hawaii Insurance Code provides that, in order to meet the requirements of the state's no-fault system, insurance policies covering motor vehicles shall include:

[l]iability coverage of not less than $35,000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident applicable to each person sustaining accidental harm arising out of ownership, maintenance, use, loading, or unloading of the insured vehicle

Haw.Rev.Stat. § 431:10C–301(b)(1) (1988) [2]. The Code defines "accidental harm" as "bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person."

Haw.Rev.Stat. § 431:10C–103(1) (1988). The term "motor vehicle accident" is defined as "an accident arising out the operation, maintenance, or use of a motor vehicle, including an object drawn or propelled by a motor vehicle." Haw.Rev.Stat. § 431:10C–103(9) (1988). The Hawaii Supreme Court has held that where such statutory language is plain and unambiguous, the court must give effect to its plain and obvious meaning. *Ferreira*, 71 Haw. at 345, 790 P.2d at 913.

This court, sitting in diversity, must apply the substantive law of Hawaii. *Chicago Ins. Co. v. Griffin*, 817 F.Supp. 861, 864 (D.Haw. 1993). The Supreme Court of Hawaii has recently considered the scope of automobile liability insurance policies as they relate to intentional acts by the insured. In *A.I.G. Hawaii Ins. Co. v. Estate of Caraang*, 851 P.2d 321 (1993), the victim, Nelson Caraang, was riding in a vehicle on the Pali Highway. Another vehicle, driven by Ilmar Godinez, drew alongside Caraang's car and the passenger of that vehicle, Emanuel Vilamor, drew a gun and shot and killed Caraang. *Id.* at 324. Godinez had no knowledge that the shooting had taken place until after reaching the windward side of Oahu and turning back toward Honolulu on the Likelike Highway. *Id.* The insurer of the Vilamor vehicle filed an action for declaratory relief, alleging that it owed no duty to indemnify Vilamor in the ensuing tort action against Vilamor and Godinez because the shooting was not an auto accident and the policy excluded coverage for any person who intentionally caused bodily injury. *Id.* at 321.

In *Caraang*, the insurance policy at issue contained language substantially similar to that used by State Farm in the instant case. The *Caraang* policy obligated the insurer to "pay compensatory damages for bodily injury ... for which any covered person becomes legally responsible because of an auto accident." *Id.* at 329 (quoting policy). The court also quoted Haw.Rev.Stat. § 431:10C–301(b)(1), the Hawaii Insurance Code provision, cited above, which requires auto insur-

---

**2.** Effective January 1, 1993, this section has been amended to require lower minimum coverage of

$25,000. *See* 1992 Haw.Sess.Laws, Act 124, § 9.

ers to cover damages arising out of accidental harm. *Id.* at 328.

█ The *Caraang* court held that the question of whether the victim's death constituted "accidental harm" must be answered from the viewpoint or perspective of the person claiming the status of an insured. *Id.* at 328–29 (citing *Hawaiian Ins. & Guar. Co. v. Blanco,* 72 Haw. 9, 16, 804 P.2d 876, 880 (1990); *Ganiron v. Hawaii Ins. Guar. Ass'n,* 69 Haw. 432, 435, 744 P.2d 1210, 1212 (1987); *Hawaiian Ins. & Guar. Co. v. Brooks,* 67 Haw. 285, 292, 686 P.2d 23, 27–28 (1984)). The court ruled that "if the insured did something or ... failed to do something, and the insured's expected result of the act or omission was the injury, then the injury was not caused by an accident and therefore not ... within the coverage of the policy." *Id.* 851 P.2d at 329 (quoting *Blanco,* 72 Haw. at 16, 804 P.2d at 880). Thus, in order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions. *Id.*

In *Caraang,* the court concluded that the insurance company did have a duty to defend and indemnify Godinez, the driver of the vehicle. The court so held because (1) Godinez was a "covered person" under the terms of the insurance policy; (2) from Godinez's viewpoint or perspective, the shooting death was accidental; and (3) the shooting arose out of Godinez's use of the vehicle. *Id.* at 331. However, the court went on to hold that the insurer had no duty to defend or indemnify Vilamor regarding the tort claim. The court stated that "from Vilamor's viewpoint or perspective ... the shooting death ... did not arise out of an auto accident, but rather was intentionally caused." *Id.* at 332. The court thus honored the "objectively reasonable expectations of policyholders and intended beneficiaries regarding terms of insurance policies" in holding that Vilamor, even assuming he was a "covered person" under the insurance policy, could not reasonably expect to be covered or defended with respect to Caraang's death. *Id.*

Defendants argue that the injury to Dennis Du Pont was caused by an "accident" when viewed from his perspective, citing *Ga-*

*niron v. Hawaii Ins. Guar. Ass'n,* 69 Haw. 432, 744 P.2d 1210 (1987). In *Ganiron,* the Hawaii Supreme Court held that the plaintiff, an insured driver of a motor vehicle, was entitled to no-fault benefits for injuries sustained when he was shot by the operator of another motor vehicle, while both drivers were on the H–1 freeway in Honolulu. The other vehicle and the person firing the gun were never identified or found. *Id.* at 435, 744 P.2d 1210. The court held that, from the standpoint of the unknown gunner, plaintiff's injuries were the result of either reckless or intentional conduct, but from the plaintiff's standpoint, they were accidental. *Id.* The court also found that such injuries "occurred because of the operation, maintenance, or use of the vehicles in question." *Id.*

The defendants argue that under *Ganiron,* they should recover from the State Farm policy because, from their perspective, the shooting was accidental. This court disagrees. In *Ganiron,* the court considered the question of whether there was coverage under the Hawaii no-fault statute for a person occupying a car and injured as a result of a gunshot from another car. *Id.* In the instant case, however, Du Pont was *not* insured under the State Farm policy. As the Hawaii Supreme Court pointed out in *Caraang,* the question of whether an accident has occurred, for the purposes of recovery under an automobile insurance policy, must be determined from the viewpoint of the insured. *Caraang,* 851 P.2d at 328–29. In applying this rule, the court finds that in order for State Farm to have a duty to defend or indemnify, Du Pont's injury could not have been the expected or reasonably foreseeable result of *Pichay's own intentional acts or omissions. See id.* at 329. In this case, Du Pont's shooting was no accident from Pichay's viewpoint or perspective. Du Pont was not insured under the State Farm policy; therefore he is not entitled to a defense or indemnification under the policy.

Defendants argue, however, that they are nevertheless entitled to recover under the State Farm policy in light of the Ninth Circuit's ruling in *State Farm Fire & Cas. Co. v. Tringali,* 686 F.2d 821 (9th Cir.1982). In *Tringali,* the tortfeasor Makua intentionally

drove his car against a stationary motorcycle on which Tringali was a passenger. Makua sought liability coverage under his automobile insurance policy, which contained language substantially similar to that contained in the policy at issue in the instant case. *Id.* at 822. The policy spoke of injury "caused by accident," without giving any particular definition of "accident." *Id.* at 825. Nor did the policy contain any clause that expressly excluded intentional injuries from its coverage. *Id.*

The Ninth Circuit held that the insurer was obligated to provide coverage for the damages Makua caused, despite the fact that the "accident" was intentional. The court thus construed the words "caused by accident" to include intentional acts. *Id.* at 824. The Ninth Circuit stated that "the adoption of a compulsory scheme of automobile liability insurance very strongly suggests a legislative intent that there be no exclusion of intentional acts of the insured." *Id.* The *Tringali* holding has been followed by district courts in this circuit on two occasions. *See State Farm Mut. Auto. Ins. Co. v. Fernandez,* 582 F.Supp. 1283, 1285 n. 2 (D.Haw. 1984); *State Farm Mut. Auto. Ins. Co. v. Fernandez,* 567 F.Supp. 413, 414 (D.Haw. 1983). Because of the subsequent clear directives of the Supreme Court of Hawaii, however, this court does not believe *Tringali*'s inclusion of the insured's intentional acts within the ambit of automobile liability insurance coverage any longer represents the law of Hawaii.

The *Tringali* court expressly recognized the deference that a federal court, sitting in diversity, should afford the Hawaii Supreme Court on the issues of compulsory insurance and the intent of the insured. The court searched in vain for an applicable Hawaii Supreme Court decision and delayed submission of the case in the hope that this issue would be decided in a case then pending before the Hawaii Supreme Court. *Tringali,* 686 F.2d at 823. No precedent existed at the time and the other case was decided on alternate grounds. *Id.* Deeming the issue one "of first impression in the law of Hawaii," the *Tringali* court was obligated to apply the law as the Hawaii Supreme Court

would have, had it been faced with the same case. *See Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir.1980) ("In this diversity action, the court must apply the substantive law of the forum state, Hawaii. In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case.") (citations omitted).

Without the benefit of the Hawaii Supreme Court's decision in *Caraang,* the court in *Tringali* ruled that coverage for injuries caused by an accident must include coverage for an intentional act, to further Hawaii's manifest public policy of compensating tort victims. *Tringali,* 686 F.2d at 824. In *Caraang,* however, the Hawaii Supreme Court implicitly rejected *Tringali*'s holding when it ruled that the question of accidental harm should be viewed from the perspective of the insured. The court recognized that when an insured commits an act that is intentional from his viewpoint, neither he nor his victim is entitled to recover under a liability policy covering accidental harm. *See Caraang,* 851 P.2d at 329. Other Hawaii Supreme Court cases are in accord.

In *Hawaiian Ins. & Guar. Co. v. Brooks,* 67 Haw. 285, 686 P.2d 23 (1984), the victim, Brooks, was offered a ride by the driver of a pickup truck. After climbing into the back of the truck, Brooks was confronted by another passenger, who raped her. *Id.* at 287, 686 P.2d at 25. The driver observed the rape but did nothing to prevent or stop it. *Id.* In Brooks's action against him, the driver sought liability coverage under the truck owner's policy. *Id.* at 288, 686 P.2d at 26. The court held that the driver was not entitled to a defense from the insurance company:

> Given these circumstances, we can only conclude the "occurrence" in question was not one for which coverage was afforded [the driver]. *From his standpoint,* it was not an accident that resulted in bodily injury neither expected nor intended.

*Id.* at 292, 686 P.2d at 28 (emphasis added).

In *Hawaiian Ins. & Guar. Co. v. Blanco,* 72 Haw. 9, 804 P.2d 876 (1990), the Hawaii Supreme Court reaffirmed its holding in

*Brooks.* In *Blanco,* the insured fired his gun in his neighbor's direction and injured him. *Id.* at 18, 804 P.2d at 881. The court held that the insured's intentional firing of the gun was sufficient to conclude that the neighbor's injuries were no accident. *Id.* at 18–19, 804 P.2d at 881. Analyzing the occurrence from the viewpoint of the insured, the court concluded that the insured could not have reasonably expected to be covered or defended with respect to injuries resulting from his intentional conduct. Thus his insurer had no duty to defend. *Id.*

In sum, because the Hawaii Supreme Court's decisions in *Caraang, Brooks,* and *Blanco* are more recent statements of the law than the Ninth Circuit's *Tringali* opinion, this court is compelled to apply those cases, and not *Tringali,* to the instant dispute.

Defendants have asserted, however, that *Caraang* is distinguishable from the instant case because the liability insurance policy in *Caraang* contained an "intentional act" exclusion, unlike the State Farm policy here, which does not contain such a specific exclusion. *See Caraang,* 851 P.2d at 324 (noting that the intentional act exclusion denied liability coverage to "any person who intentionally causes bodily injury"). Defendants' argument is unpersuasive. The presence or absence of an intentional act exclusion did not play a substantial role in the Hawaii Supreme Court's analysis in *Caraang.* Although the court looked to the intentional act exclusion in holding that Vilamor "could not reasonably expect to be covered or defended with respect to Caraang's death," the court also held that, as a matter of law, Caraang's shooting was not accidental from Vilamor's point of view. *Id.* at 331, 332. Thus Vilamor's conduct did not constitute a "motor vehicle accident" within the meaning of Haw. Rev.Stat. § 431:10C–103(9). *Id.* at 330, 331.

In *Caraang,* the Hawaii Supreme Court focussed on the meaning of the words "accident," "accidental harm," and "occurrence," as those words were used in the automobile insurance policy and in Chapter 421 of the Hawaii Revised Statutes. The court concluded in that these terms do not contemplate intentional acts committed by the insured. Thus, whether or not an insurance policy expressly excludes intentional harm from its coverage, an insured's deliberate conduct simply does not fall under the Hawaii Supreme Court's construction of "accident" or "accidental harm" for the purposes of interpreting such policies. This court holds, therefore, that the absence of an express "intentional act exclusion" in the present case is irrelevant in light of the Hawaii Supreme Court's prior interpretation of the very terms that are present in the State Farm policy.

Finally, defendants argue that Pichay is not claiming the status of an insured, and that he is not claiming that State Farm should defend or indemnify him. Defendants contend that State Farm must pay damages which its insured has become legally obligated to pay, and that such obligation must be viewed from the standpoint of the defendants. This argument ignores the teaching of *Caraang,* which states unambiguously that the accidental nature of the harm should be determined from the viewpoint of the insured. Also, regardless of whether Pichay has expressly claimed the status of the insured in this case, State Farm is obligated to fulfill its legal obligations to him. These obligations are subject to relevant language in the policy and to applicable law. As discussed above, the Hawaii Supreme Court's construction of the term "accidental harm" limits State Farm's obligation to pay damages that its insured, Pichay, has been legally obligated to pay the Du Ponts.

Moreover, this court finds that State Farm has no legal obligation to the Du Ponts. As the Hawaii Supreme Court has stated:

> It is generally held that, in the absence of a contractual or statutory provision authorizing a direct action against or the joinder of a liability insurer, an injured person, for the lack of privity between himself and the insurer, has no right of action at law against the insurer and cannot join the insured and the liability insurer as parties defendant.

*Olokele Sugar Co. v. McCabe, Hamilton, and Renny Co., Ltd.,* 53 Haw. 69, 71, 487 P.2d 769 (1971). The defendants have taken no assignment of rights from Pichay, and therefore may not assert a claim to coverage as insureds. Even if the Du Ponts were to take

**336**

an assignment, however, they would be limited by the same restrictions on Pichay's right to coverage: they would be entitled to recover nothing because, under *Caraang,* the injury here, when viewed from Pichay's perspective, was admittedly not an accident.

*CONCLUSION*

For the reasons stated above, the court finds that there is no genuine question of material fact as to State Farm's obligations under its automobile insurance policy No. 9851.1. State Farm is not obligated to defend or indemnify Pichay, or otherwise pay any sums to the defendants, for any of the defendants' injuries or claims arising out of the May 24, 1990 shooting. Plaintiff's motion for summary judgment is, therefore, GRANTED.

IT IS SO ORDERED.